THE DWELLING-HOUSE INSURANCE COMPANY V. D. W. WILDER, *as Superintendent of Insurance.*—THE WESTERN HOME INSURANCE COMPANY V. SAME.

MANDAMUS, *to Insurance Superintendent—Revocation of License.* The determination of the superintendent of insurance in granting, refusing, or revoking licenses authorizing insurance companies to transact business within the state involves the exercise of official judgment and discretion on his part, which cannot be controlled or directed by mandamus.

## Original Proceedings in Mandamus.

ON April 6, 1888, two actions were commenced in this court against the superintendent of insurance, one by *The Dwelling-House Insurance Company,* and the other by *The Western Home Insurance Company,* to compel the superintendent to issue certificates of authority to the companies to do a general insurance business in the state of Kansas for the year commencing March 1, 1888. Alternative writs of *mandamus* were allowed and issued in each of the cases. In the case of the Dwelling-House Insurance Company, the alternative writ alleges, in substance, as follows: That said insurance company is a corporation organized under the laws of Massachusetts, having its principal office in the city of Boston; that it has been in existence for many years, conducting its authorized business in the state of Massachusetts, and elsewhere in the United States, by means of its various agencies, to the satisfaction of its policyholders, and the public generally; that during the year 1884 it became desirous of extending its business into the state of Kansas, and applied, by its proper officers, to the then superintendent of insurance of Kansas for permission and license ·to transact its business within the boundaries of said state; that upon a compliance on its part with all the requirements of law for the regulation of insurance companies not organized under the laws of the state of Kansas, the then superintendent of insurance of Kansas granted permission and license to said Dwelling-House

36 — 40 KAS.

Insurance Company to transact the business of insurance within this state; that upon said license being granted to said relator, it established a large number of agencies throughout the state, and expended large sums of money in the creation of said agencies, in advertising for business, and soliciting for insurance risks; that thereby said insurance company acquired a large and profitable business within this state, and has conducted the same to the satisfaction of its policyholders, and of the public generally; that license and permission granted said relator to transact business within this state has been renewed and extended from year to year by the superintendent of insurance, upon compliance by said relator on its part with all the rules and regulations governing it, up to and until the 1st of March, 1888, at which time the superintendent of insurance refused to grant further license or permission to said relator to transact any business of insurance within the state of Kansas; that said Dwelling-House Insurance Company by and through its proper officers demanded of said superintendent the renewal of its license, and the granting of permission to it to transact its lawful business within this state, and then and there offered to comply with all the acts of the legislature, and the legal regulations of the insurance department applicable to said relator in the future, as it has done in the past, said insurance company having in all respects fully complied with every act and requirement, both of the legislature governing insurance companies not organized within this state, and also all legal rules and regulations prescribed by the insurance department; that said Dwelling-House Insurance Company is perfectly solvent in every respect, having in excess of all liabilities as computed by the standard established by the statutes of Kansas, a large surplus; that each and every policyholder within this state is well and fully protected; that there exists no reason, either legal or other, why the superintendent of insurance should not issue to said insurance company a certificate of authority to enable it to continue to transact its business in this state, except the mere whim and caprice of said superintendent;

that said relator has earnestly requested said superintendent to cause a thorough examination of the affairs of said relator, but said superintendent has refused to do so, and such examination has never been made by him; but said superintendent stated to relator that if he did anything he would request the superintendent of insurance of the state of Massachusetts to cause such examination to be made, and thereupon said relator communicated to respondent the following telegraphic dispatch from the insurance commissioner of the state of Massachusetts:

"HON. D. W. WILDER, TOPEKA, KANSAS: Dwelling-House Insurance Company was examined by this department in November last, and found to be sound and in good condition.        GEO. S. MILLER, *Insurance Commissioner*."

And said relator further represents that said insurance company is now and always has been in a sound and solvent condition, having a reserve fund largely in excess of the reserve fund provided for by the laws of Kansas; and that the refusal to grant to said relator a certificate of authority to transact business within this state will cause an irreparable injury to said relator, the Dwelling-House Insurance Company, is a violation of the rights of said relator, and that it has no adequate remedy in the ordinary courts of law.

The alternative writ issued in the case of the Western Home Insurance Company states in substance that the Western Home Insurance Company is a corporation duly organized under the laws of the state of Iowa for the purpose of carrying on a general insurance business; that in the year 1885 said plaintiff, having complied with the requirements of the laws of Kansas in such cases made and provided, was regularly admitted by the then superintendent of insurance of this state to carry on the business of insurance in said state, as provided in its charter; that the plaintiff has at all times conformed with all the requirements of the laws of Kansas, and knows no reason why it should not be permitted to continue doing business in this state under its charter and the laws of Kansas; that on or about the first of March, 1888, D. W. Wilder,

defendant herein, superintendent of insurance for Kansas, and acting in that capacity, refused to issue a certificate of authority to plaintiff; that plaintiff prepared, for the purpose of having the same filed in the insurance department, a full, complete and sufficient statement of the affairs of said plaintiff, as required by law, fully complying in every respect with the requirements of the statute in such cases provided, and which said statement is now on file in the office of defendant; that upon the refusal of defendant to issue said certificate or license, notwithstanding the compliance by plaintiff with all requirements of law as aforesaid, plaintiff requested defendant to appoint some competent person to investigate the conditions and affairs of plaintiff, and report the same to defendant, and offering to extend to said person every facility for carrying on such investigation, and to pay the expenses thereof, but defendant refused to make such appointment, or to instigate any such examination; that said Western Home Insurance Company has through its officers repeatedly requested defendant to state his reasons for refusing to issue said license, and offering to comply with any lawful and reasonable request that may be made of it, but defendant has refused and neglected and still refuses and neglects either to state his reasons for his refusal aforesaid, or to state upon what conditions he is willing to issue the same; that plaintiff has gone to great pains and expense to establish its business in Kansas; that it has established and organized a large number of agencies throughout the state, and is carrying a large amount of Kansas business; that it is carrying on its business extensively in a large number of other states, and has a great volume of business in Kansas and elsewhere; that if said defendant shall be permitted to carry out his determination to refuse to issue a license as aforesaid, plaintiff will suffer great and irreparable loss and damage to its business in this state as well as in other states where its business is being carried on; that the damage so resulting to plaintiff will be nigh ruinous, inasmuch as confidence will be shaken and distrust engendered wherever the said company is known and is carrying on business; that plaintiff is wholly

without remedy, unless it shall be granted in this case as
hereinafter prayed for; and plaintiff says that it is willing
and anxious and here tenders to do and perform any and all
things proper and necessary to be by it done and performed,
and to pay any and all expenses necessarily incurred in the
due, full and proper examination into its business and affairs
that defendant is authorized and ought to make, or that may
be necessary to fully establish the soundness and solvency of
said company, and the propriety of issuing to it a license to
do business in Kansas.

Upon being served with said alternative writs, the defend-
ant appeared and filed in each case a motion to quash; which
motion, omitting title and signature, is as follows:

"Now comes said defendant and moves the court now here
to quash and set aside the alternative writ of *mandamus* bear-
ing teste and issued herein, 6th of April, 1888, for the reason
that said writ does not state nor recite facts sufficient to entitle
the plaintiff to the relief demanded, nor to any relief what-
ever, as against the supposed grievances in said writ averred."

Upon these motions the cases were submitted to the court
for decision. The opinion herein was filed on January 5,
1889.

*Rossington, Smith & Dallas*, for plaintiff Dwelling-House
Insurance Company; *Waters, Chase & Tillotson*, for plaintiff
Western Home Insurance Company.

*S. B. Bradford,* attorney general, for defendant; *W. C.
Webb*, of counsel.

The opinion of the court was delivered by

JOHNSTON, J.: The Dwelling-House Insurance Company,
of Massachusetts, and the Western Home Insurance Com-
pany, of Iowa, are engaged in the transaction of insurance
business, and for some time prior to March 1, 1888, had been
authorized to do and were doing business in the state of Kan-
sas. At that time the companies applied to the superintendent
of insurance for a renewal of authority and license to continue

business within the state, but the application was refused. These proceedings were then instituted, in which each insurance company seeks to compel the superintendent of insurance to issue to it a license authorizing it to transact business within the state during the present year. The allegations of the petitions and the ends sought are substantially the same in both cases, and they may therefore be considered and disposed of together.

The plaintiffs set forth that they are solvent insurance companies, and have transacted business to the satisfaction of their policyholders and of the public generally; that they have made compliance with every statutory regulation and rule of the insurance department applicable to them and essential to granting them permission to continue their business in Kansas; but, notwithstanding all these things, the superintendent of insurance has denied their application and refused to grant the authority asked. As these facts are admitted by the demurrers, the only question arising in the case is, can the courts compel the performance of this act or duty by *mandamus?*

It is said on the one side that the legislature has prescribed the conditions upon which insurance companies may do business in the state, and when those conditions are complied with it is the official duty of the superintendent to grant the authority; and that this duty is only ministerial, and its performance may be enforced in the proper tribunal. The contention on the other side is, that the duty involves an exercise of judgment and discretion on the part of the superintendent which cannot be exercised, reviewed or controlled by any other officer or tribunal. The question arises, What are the functions of the superintendent, and the nature of the duty or act he was asked to perform? By chapter 93 of the laws of 1871 an insurance department was created, and rules prescribed in relation to insurance and insurance companies doing business in the state. Provision was made for the appointment of a superintendent, giving him "the sole and exclusive charge of and control over said insurance department."

In the act relating to state officers it is provided that the superintendent of insurance "shall be charged with the execution of all laws now in force, or which may hereafter be passed, in relation to insurance and insurance companies doing business in the state of Kansas." In the act relating to insurance, foreign corporations are prohibited from transacting any business of insurance in the state without first obtaining from the superintendent of insurance a certificate of authority for that purpose; and they are forbidden to engage in the business unless they have the requisite amount of capital, and shall observe and conform to other requirements therein detailed. (Comp. Laws of 1885, ch. 50a, § 41.)

In § 39 of the same act, an annual statement is required to be made to the superintendent of insurance, to enable that officer to determine the solvency of the company, the character and extent of its business, as well as the methods upon which it is conducted.

In § 7, it is provided that whenever the superintendent shall have reason to suspect the correctness of an annual statement made by an insurance company, or that its affairs are in an unsound condition, he may investigate the same; and if he deems it to be for the interest of the public he is authorized by § 8 to publish the result of the investigation in some newspaper of general circulation in the state. Whenever it appears to the superintendent from an examination that the assets of the company are insufficient, he is authorized to institute an action to dissolve the insurance company or to enjoin it from transacting any further business. (Sec. 9.)

By § 11, it is enacted that whenever it shall appear to the superintendent of insurance, from any satisfactory evidence, that the affairs of any admitted company not organized under the laws of the state are in an unsound condition, he shall revoke the authority granted to such company and cause public notice to be given of such revocation.

By § 17, it is provided that insurance companies shall pay to the state certain fees therein prescribed, and for a neglect or refusal of a company to pay such fees the superintendent

may revoke the authority or license granted to such company. Provision is also made that before a foreign fire insurance company is permitted to engage in insurance business within the state, it shall have on deposit assets or securities for the protection of its policyholders, the amount to be measured by the liabilities of the company; and the superintendent is to determine the value of the assets and the extent of the liabilities. (Secs. 58a, 58b, 58c.)

These, and other provisions of the statute relating to insurance and to the superintendent of insurance, clearly show that many of the duties of that officer are discretionary; and this is especially true regarding the granting, withholding, or revoking of authority to insurers to transact business within the state. One of the principal objects of the act creating the insurance department and the office of superintendent, is the protection of the insured by excluding from the state such companies as are unsound and irresponsible. To accomplish this, large powers and considerable discretion must necessarily be lodged with some one. The legislature has placed the execution of the insurance law and the conduct of the department in the control of the superintendent. From the provisions referred to, it will be seen that he is to determine the character and responsibility of an applying company, or of one already admitted, if there is reason to suspect that it is in an unsound condition. To do this, rigid examinations are authorized, and other safeguards provided. The legislature has prescribed the standards by which an insurance company is to be admitted, or allowed to continue business after admission; but whether the companies come up to those standards or requirements, is to be determined by the superintendent. He is intrusted with the exclusive control of the department. It is he who values their assets and investigates their condition. He examines the evidence of fair dealing or fraud on their part; and it is he alone who must be satisfied before a license is granted. On evidence satisfactory to him, a license may be revoked; and, indeed, every one of these steps in granting, refusing, or revoking the authority of in-

surers, involves the exercise of discretion and judgment, which is vested in the superintendent alone. No appeal from his determination is given, nor any power of review in any other officer or tribunal recognized in the law. When we find from the examination of the statutes that official discretion and judgment are involved in the determination of the superintendent of insurance, and that he has acted upon the application made, the end of the inquiry is reached so far as the present proceedings are concerned. It is well settled that mandamus will not lie to compel an officer to perform an act or duty which necessarily calls for the exercise of judgment and discretion. "The only acts of public functionaries which the courts ever attempt to control by either injunction or *mandamus*, are such acts only as are in their nature strictly ministerial; and a ministerial act is one which a public officer or agent is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed." (*Martin, Governor, v. Ingham*, 38 Kas. 651; High's Extr. Legal Rem., § 24.)

*Official judgment, not controlled by mandamus.*

The case of *Phœnix Insurance Co. v. Welch*, 29 Kas. 676, is referred to as sustaining the right of the plaintiffs to the remedy of *mandamus*. The court was there considering the validity of a law the operation of which depended upon a contingency. An action was brought to recover from the insurance company certain fees prescribed by what is known as the "retaliatory statute." It was argued that the law was incomplete when it came from the hands of the legislature; that its operation depended upon the action of a foreign state and the superintendent of insurance, and was therefore invalid. The court in meeting the objection, held that the rule regulating the fees to be collected was fixed by the legislature in the act challenged, and not by the superintendent. It was stated in the opinion that "it is not left to the state superintendent to determine what the rule shall be. His duty is simply to as-

certain the facts and apply the rule. He may not arbitrarily determine upon what condition the plaintiff may enter this state. He can only enforce the condition which the legislature has imposed." The question whether the determination of the superintendent involved official discretion was not in the mind of the court when that language was used; but only whether the superintendent of insurance had been delegated or was exercising legislative power by prescribing the conditions under which insurance companies might enter the state. It is true, as there stated, that the legislature has fixed the conditions upon which insurance companies may do business in the state, and that the superintendent is without authority to impose any other. It is true, also, that certain rules have been laid down to govern the superintendent in determining whether the conditions imposed have been complied with. But after he has applied these rules to the facts in the case, it still remains for him to officially judge or determine whether the conditions exist. The superintendent has no right to discriminate in favor of one company and against another of the same character and standing, nor to arbitrarily and capriciously exclude any company from the state. He is expected to honestly investigate and determine under the rules furnished for his guidance whether the conditions and requirements of the legislature have been complied with. But when he acts, and the determination is reached calling for the exercise of official judgment, the motives which actuated him are not open to inquiry in the action of *mandamus*. If the action of the superintendent of insurance was erroneous, unjust, or corrupt, the party aggrieved is not without a remedy. The legislature has provided one which is both ample and speedy, where it empowers the governor, whenever he shall become satisfied that the superintendent is inefficient, incompetent, or neglectful of his duties, or that he is corrupt or dishonest in the discharge of his duties, to remove him from office and fill the vacancy by the appointment of another. (Comp. Laws of 1885, ch. 102, § 110.)

It follows from the conclusions we have reached that the

remedy of *mandamus* is not open to the plaintiffs, and that the peremptory writs must be denied.

All the Justices concurring.