MUTUAL LIFE INS. CO. OF NEW YORK v. BOYLE, Atty. Gen., et al.

(Circuit Court, D. Kansas, First Division.  September 27, 1897.)

1. JURISDICTION OF FEDERAL COURTS—SUITS AGAINST STATE OFFICERS.
    The eleventh amendment to the federal constitution does not prevent a federal court from entertaining a suit by an individual or corporation against an executive officer of a state to compel him to perform a plain ministerial duty, as to which the law allows him no discretion, or to enjoin him from performing some official act whereby complainant's rights will be injured.

2. STATE SUPERINTENDENTS OF INSURANCE—EXCLUSION OF INSURANCE COMPANIES OF OTHER STATES.
    The Kansas law of 1889 providing, among other things, that the superintendent of insurance shall have no power to refuse an insurance company a certificate of authority to do business in the state if such company is solvent and has fully complied with the state laws, applies to life as well as fire insurance companies, and to both home and foreign corporations. The act is mandatory, and allows no exercise of discretion.

3. SAME—EQUITY JURISDICTION—INJUNCTION.
    Where an insurance company has built up a large and successful business in the state, and has valuable property and numerous policies therein, the act of the state superintendent of insurance, who is personally insolvent, in illegally refusing it a license to continue in business, and threatening to institute criminal proceedings against it, warrants a court of equity in interfering to enjoin the threatened injury, but the state officers will not be enjoined from bringing a suit in quo warranto to test the right of the company to do business in the state.

This was a suit in equity brought by the Mutual Life Insurance Company of New York against Louis C. Boyle, as attorney general of the state of Kansas, and Webb McNall, as superintendent of insurance of the same state, to enjoin them from interfering with the transaction of its business in that state, and to procure an adjudication that it was entitled to a certificate authorizing it to carry on business therein.

82 F.—45

A. H. Horton, Geo. J. Barker, J. W. Green, and E. F. Ware, for complainant.

L. C. Boyle, David Overmeyer, David Martin, and J. C. Clemens, for defendants.

WILLIAMS, District Judge. The material averments in the bill of complaint filed herein are that the complainant, the Mutual Life Insurance Company of New York, is a corporation duly organized and incorporated under the laws of the state of New York, having been organized and doing business since the year 1842; that its business, as its corporate name suggests, is that of life insurance upon the mutual plan; that it has been doing business in the state of Kansas as a life insurance company since the year 1866; that there are within the state of Kansas 3,300 citizens and residents who have taken out life insurance policies from said company, and that the aggregate of life insurance by said policies exceeds the sum of $7,000,000; that its assets on the 1st day of March, 1897, amounted to over $234,000,000, and its surplus over and above all of its liabilities amounted to over $29,-000,000; that it carries on the life insurance business generally in all the states of the United States, and in many foreign countries, and that it has in all the states and countries, including the state of Kansas, fully complied, on its part, with all the requirements of law of said states and countries for the regulation of the business of life insurance as transacted by corporations incorporated under the laws of the state of New York, and has also strictly complied with every act and requirement of the state of Kansas concerning life insurance companies incorporated under the laws of states other than Kansas, and with all the legal rules and regulations prescribed by the insurance department of the state of Kansas; that the business of life insurance depends for its ultimate success upon securing the annual contributions of a large number of patrons, and upon the continued satisfaction of such patrons with the manner in which the corporation transacts said business, and performs its obligations to its policy holders and to the public generally, and that the business of life insurance is peculiarly sensitive to the attacks of persons who appear to be in a position to have peculiar information concerning its proper transaction, and that in order for a successful life insurance corporation to give its members a proper distribution of dividends, thereby decreasing to them individually the cost of their business, it is necessary that the establishment of its business should be permanent, and that there should be situated within reasonable territorial limits general agencies or branches for the proper conduct of the business, and that it has been the successful experience of this company that by reason of its large expenditure of money, time, and skill in the creation of its agency plant, business connections, and good will of the state of Kansas, it has been able to maintain its high standing as a reliable and honorable life insurance company among the citizens of said state, and that the property of the company within the state of Kansas, consisting of its established agency plant, together with its business connections, patronage, and good will, was on the 1st day of March, 1897, of the actual value of more than $50,000; further, that on February 26, 1897, as has been its in-

variable practice and custom for more than 30 years prior thereto, it presented to Webb McNall, one of the defendants herein, a statement signed by its vice president and secretary, and verified by their oaths, giving in detail, and in strict compliance with the laws of the state of Kansas in relation thereto, the condition of the company on the 1st day of January next preceding, and on the same day presented to Webb McNall, defendant herein, as superintendent of insurance, at his office in the city of Topeka, Kan., a report made under oath by the vice president of the company, a copy of the report required by the laws of the state of New York to be annually made by the company to the superintendent of insurance of the said state, and therewith presented a certificate of authority licensing said company to transact its business of life insurance in the state of New York, issued by the superintendent of insurance of said state on or about the said day, and prior to the 1st day of March, 1897, complainant tendered to said Webb McNall, as superintendent of insurance of the state of Kansas, all of the money and fees required to be paid to the said Webb McNall, as superintendent of insurance, by the provisions of paragraph 3336 of the General Statutes of 1889, and all other statutes and regulations enacted and imposed by the state of Kansas, being conditions prerequisite to the granting of permission by the said state to the complainant to carry on and transact its business of life insurance within the state of Kansas for and during the year 1897, and until the 28th day of February, 1898; that at the time above mentioned the said Webb McNall was the duly appointed, qualified, and acting superintendent of insurance of the state of Kansas, and, under the provisions of the laws of said state in relation to his office, was the duly authorized and constituted officer, and by said statutes and laws was required to issue to life insurance companies incorporated under the laws of other states certificates of authority, evidencing the permission of the state of Kansas that such life insurance companies were and should be entitled to transact their said business within said state for said period of time; and, further, that the said Webb McNall, defendant herein, pretending to act as such superintendent of insurance of the state of Kansas, and as the agent of said state in that behalf, disregarding his plain ministerial duty in the premises, refused and declined, and still refuses and declines to issue and deliver to the said company a certificate of authority, under the seal of the insurance department, evidencing the compliance of said company with all the laws of said state applicable to the defendant as a life insurance corporation incorporated under the laws of the state of New York, and refused and still refuses to accept the tender so made by the company of the money and fees required to be paid and accepted under the laws of the state of Kansas. Charges that said Webb McNall, in his actions in so refusing to issue said permit, was instigated by malicious, wicked, arbitrary, and capricious design on his part to oppress this company and deprive it of its property without due process of law; that the said Webb McNall well knew, and had frequently publicly admitted, that said company was solvent, and had been solvent for a long time prior to said application, and that the said company had complied with all the laws, rules, and regulations enacted and imposed by the state of Kansas concerning said com-

pany, and that the sole cause of said arbitrary, wicked, and malicious assertion of authority on the part of the said Webb McNall was the purpose of compelling said company to pay to one Sallie E. Hillman a claim she pretended to have against said company for a large sum of money, to wit, more than $20,000, without her first obtaining any judgment of any court for the same. Makes a letter written by the said Webb McNall to the agent of the company a part of said bill, which letter is as follows:

"Topeka, Kansas, March 3, 1897.

"John E. Lord, General Agent Mutual Life Insurance Company of New York, Topeka, Kansas—Dear Sir: Replying to your request for license to do business in this state for the ensuing year after you had filed your annual statement, and after your check in the sum of $100 in payment of fees had been tendered to this department, I will say that, on evidence satisfactory to this department, I am satisfied that your company has not dealt fairly with the plaintiff, Mrs. Sallie E. Hillman, in refusing to pay the death loss, and in the litigation of the same, pertaining to her deceased husband. Hence this department refuses to issue to the Mutual Life Insurance Company of New York a license to do business in this state for the ensuing year. Your check in the sum of $100 is herewith returned.

"Very respectfully, Webb McNall, Superintendent."

Complainant further states, in relation to said claim of said Sallie E. Hillman, that there was presented to the complainant a claim by the said Sallie E. Hillman demanding payment by said company to her of the sum of more than $10,000, which it was claimed by said Sallie E. Hillman this company owed her on account of the issuance by the company to one John W. Hillman of a certain policy of life insurance. It alleges that the claim of the said Sallie E. Hillman, being false and fraudulent, was denied and refused, and thereafter, and during the year 1879, the said Sallie E. Hillman commenced an action at law in the circuit court of the United States for the district of Kansas against said company, to recover a judgment for said sum of more than $10,000; and it alleges that ever since said action at law was commenced the company has been in the orderly and peaceful litigation in said court of said claim, and that the said Sallie E. Hillman has never recovered a final judgment against this company for any part of said sum, and that her claim is at this time, and has been for more than 15 years, a disputed claim in the course of an orderly and proper litigation in said court, which said litigation is still pending and undetermined. It charges further that the damage and injury to the company will be irreparable, and that for such damage the company has no adequate remedy at law; it alleging, upon information and belief, that the said Webb McNall is wholly insolvent. It further states that by the laws of the state of Kansas the said insurance commissioner, whenever, in his judgment, it is necessary, may call upon the attorney general of the state to bring actions or to prosecute criminally any insurance company doing business in said state without a license, and that this may be done in any county in the state where the said insurance company has an agency or an agent; and as against the said Louis C. Boyle, the attorney general of said state, it charges him with upholding and encouraging the defendant Webb McNall in the assertion by the said Webb McNall of the right to deny to the plaintiff the equal protection of the laws within the state of Kansas, and of the right to deprive it

of its property without due process of law, and that, acting in concert with the defendant Webb McNall, and for the purpose of harassing and intimidating the agents and employés of the complainant, he has threatened to, and will, unless restrained by the court, commence proceedings against complainant, its agents and employés, and compel it to defend a multiplicity of suits in actions instigated by said McNall and said Louis C. Boyle for the purpose of preventing complainant from peaceably transacting its business of life insurance within the state of Kansas, and designed by the defendants, McNall and Boyle, to deny to complainant the equal protection of the laws, and deprive it of its property within the state of Kansas without due process of law. The prayer of the bill is for a decree adjudging that it is the duty of said Webb McNall, as superintendent of insurance, to forthwith issue and deliver to the complainant a certificate of authority to do business within the state of Kansas, and also that the court grant a temporary injunction against the said Webb McNall, as superintendent of insurance of the state of Kansas, his agents and employés, and against the said Louis C. Boyle, as attorney general of the state of Kansas, enjoining and restraining each of said defendants, and all persons acting under them, from in any manner whatever interfering with the transactions by the complainant in the state of Kansas of its said business of life insurance, and for all other relief.

This petition and application for restraining order were presented to one of the United States district judges who was assigned to hold court in the district of Kansas, who thereupon granted a restraining order, restraining the defendants, McNall and Boyle, from interfering with said insurance company, in accordance substantially with the prayer of the petition; said restraining order to remain in force only until the next term of court to be holden where the said action was commenced. At the hearing the defendants interposed a demurrer to said complaint, and all questions involved and raised by the demurrer are submitted to the court for final determination.

There are two questions of law involved in this case. The first is as to the power of the court to grant the relief prayed for, taking into consideration the provisions of the eleventh amendment to the constitution of the United States, which, it is urged by the defendants, prohibit the court from proceeding in any manner against the defendants, because they are officers of the sovereign state of Kansas, and they are within the prohibition, and are protected by the provisions of said amendment from being required to answer, or restrained from acting, in any manner, as officers of said state. That the question involved is one of importance need not be asserted, and this court desires to express at the very threshold of the investigation a lifelong conviction and adherence to the doctrine that the rights of the states under our form of government should at all times receive proper protection, especially at the hands of the judicial department of the general government; and while it will, in the discharge of its duty, endeavor to enforce all laws of the United States, it will also, under all circumstances, "render unto Cæsar the things that are Cæsar's," and abstain from encroaching in any manner upon the rights of any sovereign state or the officers thereof.

The question of the force and effect of the eleventh amendment to the constitution of the United States, and to what extent the officers of the several states are exempt, under it, from any process of control by the courts of the United States, has been a subject of adjudication upon many occasions, and has been many times decided, by the supreme court of the United States. I deem it unnecessary to refer to all the decisions, but begin with the decision in the case of Board v. McComb, 92 U. S. 531. In that case the court used the following language:

"Although a state, without its consent, cannot be sued by an individual, nor can a court substitute its own discretion for that of the executive officers in matters belonging to their proper jurisdiction, yet when a plain official duty, requiring no exercise of discretion, is to be performed, and performance refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance; and, when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it. In such cases the writs of mandamus and injunction are somewhat correlative to each other."

In the case of Cunningham v. Railroad Co., reported in 109 U. S. 446, 3 Sup. Ct. 292, 609, the court, referring to the case of Board v. McComb, supra, uses the following language, "In the opinion in that case the language used by Mr. Justice Bradley well and tersely expresses the rule and its limitations," and then quotes approvingly the language used by Justice Bradley in that opinion. In the case of Allen v. Railroad Co., 114 U. S. 311, 5 Sup. Ct. 925, 962,—it being one of the celebrated Virginia Coupon Cases,—the court again quotes the language of the decision in Board v. McComb approvingly, as well as the other cases of like character that had been theretofore decided by the supreme court. The case of Hagood v. Southern, reported in 117 U. S. 52, 6 Sup. Ct. 608, is a case that seems to be relied upon by the defendants to show that suits of the character now under consideration are prohibited by the eleventh amendment to the constitution of the United States. The supreme court in that case, on page 69, 117 U. S., and page 616, 6 Sup. Ct., uses the following language:

"The principle which governs in the cases that are cited must be carefully distinguished from that which ruled in Osborn v. Bank, 9 Wheat. 738, Davis v. Grey, 16 Wall. 203, Board v. McComb, 92 U. S. 531, and Allen v. Railroad Co., 114 U. S. 311, 5 Sup. Ct. 925, 962,—a distinction which was pointed out in Louisiana v. Jumel [2 Sup. Ct. 128], and in Cunningham v. Railroad Co., 109 U. S. 446, 3 Sup. Ct. 292, 609. The rule for such cases is well stated by Mr. Justice Bradley in Board v. McComb, and is as follows:" (Then quoting the language used by Justice Bradley in that case, with approbation.)

In Re Ayers, reported in 123 U. S. 443, 8 Sup. Ct. 164, and which is the case relied upon with seeming entire confidence by the counsel for the defendants in this case, the court uses the following language:

"But this is not intended in any way to impinge upon the principle which justifies suits against individual defendants, under color of the authority of unconstitutional legislation by the state, who are guilty of personal trespasses and wrongs, nor to forbid suits against officers in their official capacity, either to arrest or direct their official action by injunction or mandamus, where such suits are authorized by law, and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a legal interest. In respect to the latter class of cases, we repeat what was said by this court in Board v. McComb, 92 U. S. 531:" (Then quoting the language of Justice Bradley in that case.)

In the case of Scott v. Donald, reported in 165 U. S. 58, 17 Sup. Ct. 265, the court uses the following language:

"Where a suit is brought against defendants who claim to act as officers of a state, and, under color of an unconstitutional statute, commit acts of wrong and injury to the property of the plaintiff, to recover money or property in their hands unlawfully taken by them in behalf of the state, or for compensation for damages, or, in a proper case, for an injunction to prevent such wrong and injury, or for a mandamus in a like case to enforce the performance of a plain legal duty, purely ministerial, such case is not, within the meaning of the eleventh amendment to the constitution, an action against the state."

One of the most authoritative cases upon this subject is Reagan v. Trust Co., 154 U. S. 362, 390, 14 Sup. Ct. 1051, in which that eminent jurist, Justice Brewer, used the following language:

"Neither will the constitutionality of the statute, if that be conceded, avail to oust the federal court of jurisdiction. A valid law may be wrongfully administered by officers of the state, and so as to make such administration an illegal burden and exaction upon the individual. A tax law, as it leaves the legislative hands, may not be obnoxious to any challenge, and yet the officers charged with the administration of that valid tax law may so act under it in the matter of assessment or collection as to work an illegal trespass upon the property rights of the individual. They may go beyond the powers thereby conferred, and when they do so the fact that they are assuming to act under a valid law will not oust the courts of jurisdiction to restrain their excessive and illegal acts. * * * Nor can it be said in such a case that relief is obtainable only in the courts of the state. For it may be laid down as a general proposition that, whenever a citizen of a state can go into the courts of a state to defend his property against the illegal acts of its officers, a citizen of another state may invoke the jurisdiction of the federal courts to maintain a like defense. A state cannot tie up a citizen of another state, having property rights within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts. Given a case where a suit can be maintained in the courts of the state to protect property rights, a citizen of another state may invoke the jurisdiction of the federal courts."

It seems clear, then, that it is the well-settled doctrine that where an officer of a state, in the language as used by Judge Bradley in the case of Board v. McComb, is in the discharge of a plain official duty, requiring no exercise of discretion in the act to be performed, and performance is refused, any person who sustains personal injury for such refusal may have a mandamus to compel its performance; and, when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it. The federal courts may entertain jurisdiction in suits by persons against such officer, and may afford adequate remedy by a mandatory injunction in order to protect the rights of parties injured by the action of said state officer. It only remains, then, to inquire, what are the duties of the defendant McNall, as superintendent of insurance of the state of Kansas, as declared by the statutes of said state? The law of Kansas prior to the year 1889, in relation to the duties and powers of the state superintendent of insurance, as defined and declared by the supreme court of Kansas, seem to be as follows: Referring to the different sections and provisions of the insurance laws, the court declares:

"These and other provisions of the statute relating to insurance and to the superintendent of insurance clearly show that many of the duties of that officer are discretionary; and this is especially true regarding the granting, withholding, or revoking of authority to insurers to transact business within the state." Insurance Co. v. Wilder, 40 Kan. 568, 20 Pac. 268.

And it was held by the supreme court of the state of Kansas in the case of Insurance Co. v. Wilder, above referred to, that the state superintendent of insurance had the absolute right to refuse to any company a license to transact business in this state, regardless of their solvency or their having complied with the requirements of the law. After this decision, referred to in 40 Kan. 561, 20 Pac. 265, the legislature that met soon after, or perhaps that were then in session, passed the law that is now in force in relation to the duties of state insurance commissioner; but the contention of the defendant is that that amendment only relates to home mutual fire insurance companies, and that, by the wording of the title of the act, no provision relating to any other kind of insurance companies could be properly enacted under said title. The act in controversy is known as "Chapter 159, Session Laws of 1889," and went into effect in March of that year. It is entitled "An act relating to insurance and amendatory of section 24 of chapter 132 of the Laws of 1885, being an act entitled 'An act to provide for the organization and control of mutual fire insurance companies,'" and contains the following language:

"Provided, however, that the superintendent of insurance shall have no power or authority to refuse an insurance company a certificate of authority to do business in the state, if such company is solvent and has fully complied with the laws of the state. And provided, further, that such superintendent of insurance shall have no power to revoke or suspend the certificate of authority of any association or corporation transacting the insurance business, if such association or corporation is solvent and complies with all the laws of this state. Also, it is further provided that in all actions brought against the superintendent of insurance to compel him by mandamus, or otherwise, to issue certificates of authority to any association or corporation desiring to transact insurance business in this state, and in all cases brought against the superintendent of insurance to restrain or enjoin him from revoking or suspending the certificate of authority of any association or corporation transacting insurance business in this state, such action or actions must be commenced and maintained in the county where the office of superintendent of insurance is located and carried on."

It would seem that the language of the act embraces all insurance associations or corporations desiring to transact business in Kansas. The language of the title being "An act relating to insurance and amendatory of section 24, c. 132," etc., the title of the act seems certainly broad enough to cover any legislation in relation to insurance or insurance companies. Referring to the contention of counsel for the defendant that the act was not intended and designed to affect the duties of the state superintendent of insurance in relation to any but home mutual fire insurance companies, it may be proper to state that up to the year 1871 there was no law of the state of Kansas requiring insurance companies of any kind, incorporated by the laws of the state of Kansas, to have any certificate or license in order to transact business. By the act of 1871, creating the insurance department in the state of Kansas, under the head, "Insurance Other than Life," sections 29 and 30 of

said act will be referred to, as important in this connection and upon this point. Section 29 is as follows:

"It shall be lawful for any insurance company incorporated under the laws of this state for any purpose other than life insurance, to invest its capital and the funds accumulated in the course of its business, or any part thereof, in bonds and mortgages on real estate," etc. (the balance of the section directing in what manner its funds shall be invested).

Section 30, at length, is as follows:

"Upon the complying with the foregoing provisions by any such insurance company, the superintendent of insurance shall cause an examination to be made, either by himself or some disinterested person, specially appointed by him for that purpose, who shall certify under oath that the capital herein required of the company named, according to the nature of the business proposed to be transacted by said company, has been paid in, and is possessed by it in money, or in such stocks and bonds or mortgages as are required by the 29th section of this statute, in an amount not less than one hundred thousand dollars. Such certificate shall be filed in the office of such superintendent, who shall thereupon deliver to such company a certified copy of such certificate, which, upon being recorded in the office of the register of deeds of the county where the company is located, in a book provided for that purpose, shall be their authority to commence business and issue policies."

This is the law of Kansas to-day in relation to fire insurance companies incorporated under the laws of Kansas, and it was in full force and effect at the time of the decision in 40 Kan. of Insurance Co. v. Wilder (40 Kan. 561, 20 Pac. 265). The decision in that case was in relation to the rights of fire insurance companies which were not organized or incorporated under the laws of the state of Kansas, but were foreign corporations; and by the reading of the section referred to, and its careful consideration, the court is at a loss to know what additional legislation in the way of relief from any oppression by the state superintendent of insurance the mutual home fire insurance companies of the state of Kansas needed or required. That the decision of the supreme court of the state, deciding, as it did, that the state superintendent of insurance, in relation to foreign insurance companies, had discretionary power to refuse or grant a license or certificate to do business, delivered, as it was, in January, 1889, was the prime factor moving the legislature to pass the amendment to the insurance laws, as heretofore stated, seems to me a clear proposition, requiring no argument to support it. That some such legislation was imperatively needed, the action of the state superintendent of insurance in the case at bar would clearly show. The action of the superintendent, in this case, refusing to grant a license to transact business in the state to a company that he himself admits to be solvent and to have complied with the laws of the state, for the reason contained in his letter to the agent of the insurance company, to state it very mildly, is arbitrary, and is an assumption of authority by a ministerial officer that is startling. The reason for the refusal, as announced in his letter, is because they have not treated Mrs. Sallie E. Hillman, whose husband held a policy in this company, fairly, and the refusal to pay said policy to her is the sole basis of his refusal to grant a license to the company to do business in the state of Kansas. In this connection it is proper that the court should state the condition of said claim, as it was well known to the insurance commissioner at the time of said

refusal. An action to recover upon said policy has been pending in the courts of the United States in the district of Kansas for more than 18 years. The action has been tried five times in said courts, and the trials presided over by five different judges, beginning with the fair-minded, learned, and able jurist who has presided over the courts in said district for nearly a quarter of a century, and the next in the order of trials presided over by that eminent jurist, Associate Justice Brewer, who was at that time United States circuit judge for the eighth judicial circuit, and the next time in the order of trials presided over by a judge of large experience and eminent learning, Justice Shiras, of Iowa, followed next in order by the late lamented Judge Thomas, of North Dakota, and lastly by the district judge delivering this opinion; and the only success in determining this issue that has been properly raised in the courts of the United States between the insurance company and Mrs. Hillman has been four mistrials, and a verdict and judgment at one trial which were reversed by the supreme court of the United States. And at this time, after these repeated trials, and the case still pending in the United States court, for an officer clothed with any power or authority to refuse to grant any insurance company whatever a license or a certificate to transact business in the state, because of their refusal to pay a claim thus contested and thus tried, is virtually a denial to such parties of their right to submit any case to a final determination by a jury of their country. This action by the state superintendent of insurance, refusing to grant a license to another life insurance company for the same reason that it is denied in this case, upon being called to the attention of the district judge of this district, was deemed by him such an interference with the administration of the law and with the rights of litigants in his court that he called the attention of the United States grand jury to said action, and it appears by the records of said court that the grand jury have found an indictment against him for such interference. Looking to the existing evil sought to be corrected by the legislature, it would seem, then, that it is small wonder that the legislature of 1889, perhaps foreseeing that such arbitrary power vested in any one individual would lead to just such results as it has in this case and in the other case referred to, intended, by their amendment of the insurance laws, to deprive him of such discretionary power, for it ought not to and cannot exist in a state or country where the right of a trial by jury is ever held to be the palladium of the liberties and the rights of the people. It would seem, from the history of the state of Kansas, that it certainly could not long exist here. The pioneers of the state of Kansas were eminent and distinguished in their assertion of equal rights to all persons under the law; and her statehood, under its constitution, which breathes in all its provisions the principles of freedom, and the right of every one to seek redress for all grievances and the enforcement of all rights by recourse to the laws, and to be protected by the laws, was the result of the actions of the Kansas pioneers of 1855, 1856, 1857, and of all the stormy years that have passed, and are a part of the history of the territory, up to its admission as one of the great states of this Union. It may well be admitted and considered that the law-makers of 1889 were of the pioneers of 1856 and 1857 and 1860, or

their immediate descendants; and the intention of those lawmakers, it may well be concluded, was to enact a law asserting that no officer should have the arbitrary right to deprive any person, natural or artificial of the enjoyment of the right of trial by jury in any case whatsoever. If such was not their intention and desire, it must be admitted that the ardent desire for freedom and liberty which animated their breasts in the early years had departed, and that the soul of that great leader of the pioneers of Kansas, the man of Osawatomie, had at that early period in the history of the state ceased "to go marching on." That in the enactment of this law they may have builded better than they knew, may be admitted; but this is true of the framers of not only the constitution of the United States, but of many of the beneficent laws that have been enacted, and that are now upon the statute books of the United States and of the various states of this Union. That it is the law of this state regulating the duties and powers of the state superintendent of insurance, after a careful consideration of it, I have not the slightest doubt. That being the case, it follows that in relation to the duty of the state superintendent of insurance to grant a license to transact business in this state to any insurance company that is solvent and has complied with the laws of this state, he has no discretion whatever, and the law is mandatory upon him to grant such license whenever the conditions stated in the law are complied with. This brings his action within the exceptions and rules laid down concerning actions that may be brought against a state officer under the eleventh amendment to the constitution of the United States, as held by the numerous decisions of the supreme court of the United States, and determines that the federal court of this district has jurisdiction to hear and determine this issue.

As to the right of the complainant company to have a mandatory injunction against him, there seems to be no question, because the complaint states unequivocally that it has property in this state, in a large amount, that is affected by the action of the state superintendent of insurance, and this is not denied by either respondent. In fact, a denial of it would be futile. It is admitted that this complainant has effected insurance upon the lives of more than 3,000 persons in the state of Kansas, and the amount of the policies exceeds the sum of $7,000,000. It is manifest that, if it is prohibited from keeping up its business in the state, its property rights would be, if not destroyed, materially injured, and the injury is apparently irreparable,—the state superintendent of insurance being declared by the complainant to be insolvent, and that insolvency not denied; thus affording to the complainant a right, in a court of chancery, to have its interests in this large property protected by the courts of the United States.

I might well have been content to have allowed this case to be decided by a simple reference to the decision of the learned district judge who presides over this district in the case of Insurance Co. v. McNall, 81 Fed. 888, in which opinion I fully concur; but I have deemed it best to submit my conclusions in the matter in this opinion, craving the indulgence of all parties, and the bar generally, for the very crude manner in which it has been prepared in the very short time that I have been able to give to its consideration.

The relief prayed for in the bill is granted, and a perpetual injunction shall issue against the defendant Webb McNall, as state superintendent of insurance of the state of Kansas, restraining him from in any manner interfering with the company or its agents in the transaction of insurance business in the state of Kansas, and commanding him to issue a license to said company as required by the laws of the state of Kansas, and restraining all others that may act, or be called upon to act by him, from interfering with said company in the transaction of business in the state as. above stated. But the respondent the attorney general of the state of Kansas is not included within this injunction, to the extent of prohibiting him from bringing any suit of quo warranto against said company in any of the courts of this state to test its right to transact business in the state; but he is restrained from acting as contemplated by the statute of the state of Kansas, upon the request of the insurance commissioner, in bringing suits other than quo warranto against the company or its agents for transacting its business in the state.

I may add, in conclusion, that the company having, in the judgment of the court, complied with all the requirements of the law of the state (having demonstrated to the entire satisfaction of the insurance commissioner that it is solvent, and tendered him the amount of fees required to be paid before a license could be obtained), it has done all that it could do, or the law required of it to do; and the arbitrary refusal of the superintendent of insurance to grant it a license does not, in my judgment, prevent its transacting business in the state, and consequently it should not be interfered with or prevented from transacting such business; for, if the superintendent of insurance is without discretion to refuse a license to the company upon its compliance with the requirements of the laws of the state, it follows that, if it has so complied with the laws in all respects, such compliance has the full force and effect of a license to transact business, for it has done all it was required to do, and all that it could do.