## THE MAYOR AND COUNCIL OF HAGERSTOWN, AND G. W. FRIDINGER *vs.* THE BALTIMORE & OHIO RAILROAD COMPANY.

*Municipal Corporations—Invalidity of Ordinance Prohibiting Keeping of Cattle Except in Enclosed Structures.*

An ordinance of the municipality of Hagerstown made it unlawful for any person or corporation, without first obtaining a permit therefor, to herd or keep cattle, swine or other domestic animals, either temporarily or permanently, in the city limits, at any point within two hundred and fifty feet of two or more residences, unless such animals be kept in an enclosed and covered structure, with only such openings as may be necessary for ventilation and access. *Held*, that this ordinance is invalid, *first*, because it is not within the charter powers of the municipality to remove and abate nuisances and preserve the public health, since a stockyard is not a nuisance *per se*, and a municipality has no power to declare a thing to be a nuisance which is not such at common law, or under a statute; and, *secondly*, because the granting of a permit to keep cattle otherwise than in a covered structure is not regulated or controlled by the provisions of the ordinance, but is committed to the arbitrary will of municipal officers, who may give permits to some and refuse permits to others under the same conditions.

*Decided January 7th, 1908.*

Appeal from the Circuit Court of Washington County (KEEDY, J.)

The cause was argued before BRISCOE, BOYD, SCHMUCKER, BURKE and ROGERS, JJ.

*Alexander Neill, Jr.* (with whom was *William J. Witzenbacher* on the brief); for the appellant.

The defendant has full and ample authority under its general welfare clauses and the police power to pass and enforce the ordinance in question. *Radecke case*, 49 Md. 217; *Mott case*, 61 Md. 303; *Boehm case*, 61 Md. 263; *Hagerstown* v. *Witmer*, 86 Md. 293; *Deem* v. *Balto.*, 80 Md. 164; *Cochrane* v. *Frost-*

*burg*, 81 Md. 63; *Ford* v. *State*, 85 Md. 465; *Fisher* v. *St. Louis*, 24 Sup. Ct. Rep. 675; *Dillon on Minn. Cor.*, 3 ed. sec. 379.

To regulate the keeping of swine and cattle within the city limits is within the police power.   *Fisher* v. *St. Louis*, 194 U. S. 361.

"The necessity of legislation to restrain the unlimited herding of swine and cows in thickly populated districts is too apparent to need argument." *In re. Linehan*, 13 Pac. Rep. 171.

Offensive smells and unpleasant noises are bound to come from such yards when in use.   *Dolan* v. *Chicago R. R. Co.*, 95 N. W. Rep. 385; *Bushnell* v. *Robeson*, 17 N. W. Rep. 888; *Rhodes* v. *Dunbar*, 57 Pa. St. 274; *Slaughter House cases*, 16 Wall. 61; *Bishop* v. *Banks*, 33 Conn. 127; 87 *Am. Dec.*, 197; *Attorney General* v. *Stuart*, 20 N. J. Eq. 420.

The Mayor and Council have the right and power to grant or withhold a permit such as is granted in this ordinance. *Kadecke case*, 49 Md. 217; *Commissioners of Easton* v. *Covey*, 74 Md. 262; *Mayor* v. *Merryman*, 23 Md. 467.

The Supreme Court of the United States, in *Fisher* v. *St. Louis*, 194 U. S. 36; where this identical question as to the right to require a permit was presented to them, decided that it was a proper and valid provision.

The right of a town to segregate certain sections of its area by special legislation and to prescribe limits wherein special provision shall be operative has always been upheld.   *Crowley* v. *Ellsworth*, 38 So. Rep. 199; *Ex parte Glass*, 90 S. W. Rep. 1108; *Scranton* v. *Straff*, 28 Pa. Sup. Ct. 258; *Patterson* v. *Johnson*, 73 N. E. Rep. 761; *Dobbins* v. *Los Angeles*, 72 Pac. Rep. 970; *Ex parte Foote*, 65 S. W. Rep. 706; *City of New Orleans* v. *Faber*, 29 So. Rep. 507; *Cartwright* v. *Cohoes*, 59 N. E. Rep. 1120; *Ex parte Lacey*, 41 Pac. Rep. 411; *Chicago* v. *Stratton*, 44 N. E. Rep. 853; *Ex parte White*, 7 Pac. Rep. 186; *Commonwealth* v. *Patch*, 97 Mass. 221; *Morand* v. *New Orleans*, 2 La. Ann. 217.

This ordinance does not in any way attempt to destroy stock yards within the corporate limits, but simply regulates

how horses, cattle, etc., shall be confined or herded. Ordinances may regulate but cannot restrain trade. *Radecke case*, 49 Md. 217; *State* v. *Mott*, 61 Md. 297; *Wood on Nuisances*, sec. 773-776; *Piere* v. *Mayor*, 42 Miss. 495; *Hays* v. *City*, 24 Wis. 544; *Dillon on Municipal Corps*, 3 ed., sec. 393.

*J. Clarence Lane* and *Wm. Ainsworth Parker* (with whom was *Henry H. Keedy, Jr.*, on the brief), for the appellee.

Ordinances which are unfair, partial, unreasonable, arbitrary or oppressive are invalid. *Baltimore* v. *Radecke*, 49 Md. 217; *Vansant* v. *Harlem Stage Co.*, 59 Md. 330; *State* v. *Rowe*, 72 Md. 548; *Long* v. *State*, 74 Md. 565; *Cooley, Cons. Lim.*, 240; 1 *Dillon Mun. Cor.*, sec. 322; *State* v. *Hyman*, 98 Md. 596.

A stock yard situated in a town is not a nuisance at common law, nor has it been declared such by statute. *Joyce, Law of Nuisance*, sec. 209; *Stadler* v. *Grieben*, 51 Wis. 504; 21 N. W. 631; *St. Louis* v. *Schnuckenberg*, 7 Mo. Appeals, 536; *Bielman* v. *Chicago, &c. R. R. Co.*, 50 Mo. Appeals, 51.

"Where the town council of a borough imposed a fine upon every person who should keep, or suffer to be kept, any swine within the borough between the 1st of May and the 1st of October, it was held that the by-law was wholly invalid, as the keeping of a pig did not necessarily create a nuisance." *Everett* v. *Grapes*, 3 Law T. R. N. S. Q. B. 669; 1 *Addison on Torts*, sec. 54, p. 61; 1 *Dillon Mun. Cor.*, 379, note.

Nowhere is any authority given to the Mayor and Council to declare what shall constitute a nuisance, nor can such authority be fairly or reasonably inferred from any of the powers granted. A municipality has no power to declare that a nuisance which is not a nuisance at common law or has not been declared such by statute. *Frostburg* v. *Hitchens*, 99 Md. 617; *Frostburg* v. *Wineland*, 98 Md. 239; *New Windsor* v. *Stockdale*, 95 Md. 196; *King* v. *Hamill*, 97 Md. 103.

Such a power "would place every house, every business and all property in the city at the uncontrolled will of the temporary local authorities." *Yates* v. *Milwaukee*, 10 Wall. 497.

The test of the reasonableness, validity and constitutionality of the ordinance is, not what has been done under it, but what may be done or attempted to be done by its authority. *Ulman* v. *Baltimore, 72* Md. 587, 596.

And if this ordinance is valid, any person keeping two or more dogs or cats in his yard or house, or keeping two or more horses or cows in a yard or vacant lot in any part of the town, without first obtaining the permission of the Mayor and Council, would be a violator of the law and subject to arrest and fine or imprisonment.

Such an ordinance cannot be reasonably necessary "for the preservation of the cleanliness, health, peace and good order of the community" or "for the good government of the town," and if not, the town authorities have no power to pass it.

If herding and confining domesticated animals temporarily, transiently, habitually or permanently is a nuisance, *per se*, or likely to become such, the building, such as required by the ordinance, would not abate it, but would make the herding and confining of any number of domesticated animals therein more objectionable.

The ordinance does not make the keeping, herding, &c., of live stock, &c., when done in the localities mentioned in the ordinance without being enclosed as therein specified, unlawful, but only when it is done without permission of the Mayor and Council, thus placing in the hands of the Mayor and Council arbitrary and discretionary power to determine who shall be allowed to maintain enclosures or structures for the herding of live stock within the prescribed limits, and is therefore a violation of the Fourteenth Amendment of the Constitution of the United States.

It prescribes no rules by which the Mayor and Council are to be guided in granting or withholding the permission, or by which its impartial execution can be secured or partiality and oppression prevented.    It enables the Mayor and Council to grant the privilege to some; to deny it to others and places the business of all those engaged in any calling in which it is

necessary to keep or confine live stock, at the mercy of the whim, caprice or partisan action of the Mayor and Council; it could be administered for the advantage of one or more to the detriment of their competitors.

The appellee has expended a large sum of money in procuring land, erecting proper and suitable structures, which are necessary for it in the handling of its business of transporting live stock, and had thereby built up a large and lucrative business, which under this ordinance can be and is attempted to be taken away from it and given to its competitors.    It makes no difference how well the ordinance *might* be administered; if it is capable of being administered partially or unreasonably it is invalid.    "The test of the validity and constitutionality of an ordinance is, not what has been done under it, but what may be done or attempted to be done by its authority."    *Ulman* v. *Balto.*, 77 Md. 587-596.

"The fact that it permits arbitrary discrimination and abuses in its execution, depending upon no conditions or qualifications whatever, other than the unregulated will of certain designated persons, is the touchstone by which its validity is to be tested."    *In re Christensen*, 43 Fed. 243.

A municipal ordinance which places any restriction upon lawful conduct or the lawful use of property must specify the rules and conditions to be observed in such conduct or business, and must admit of the exercise of the privilege by all who will comply with such rules and conditions; if it admits of the exercise, or of an opportunity for the exercise of any arbitrary discrimination by the municipal authorities it is invalid.    *Richmond* v. *Dudley*, 129 Ind. 115, 13 L. R. A. 589; *State* v. *Tenant*, 110 N. C. 613, 15 L. R. A. 424; *Barthet* v. *New Orleans*, 24 Fed. 563, 565; *State* v. *Manner*, 43 La. Ann. 498; *Los Angeles Co.* v. *Hollywood Cemetery Co.* 124 Cal. 329; *Bostock* v. *Sams*, 95 Md. 415.

"We think it too clear for argument that the ordinance is illegal and void, by reason of the provision contained in the first section which makes the establishment of private markets thereafter depend upon the applicant obtaining permission of

the city council." *State* v. *Dubarry*, 44 La. Ann. 1119, 11 So. 718.

An ordinance forbidding the stabling of two or more horses, without obtaining permission of the city council, was held to be unequal in its operation and hence void, because repugnant to the fourteenth amendment of the Constitution of the United States. *State* v. *Kuntz*, 47 La. Ann. 107, 16 So. 651.

The plantiff being authorized and required to maintain appliances for the purposes of receiving, properly caring for, and properly loading and unloading live stock, as a common carrier, by the grant of its charter, by the express terms of the charter of the Washington County Railroad Company and by the statute of the United States, the Mayor and Council of Hagerstown cannot make it unlawful for it to maintain them. *Cov. Stock Yards* v. *Keith*, 139 U. S. 128; *Stockland* v. *C. & A. Ry Co.*, 101 Mo. App. 427; 74 S. W. 595; *McCullough* v. *Wab. West R. Co.*, 34 Mo. App. 23; *Kansas P. R. Co.* v. *Reynolds*, 8 Kans. 623; *Harman* v. *N. & W. R. R. Co.*, 91 Va. 601, 44 L. R. A. 289; *C. & O. Ry. Co.* v. *Amer. Ex. Bank*, 92 Va.

BRISCOE. J., delivered the opinion of the Court.

The questions for decision in this case arise upon an appeal from a decree of the Circuit Court for Washington County overruling a demurrer to a bill in equity. The principal question involved turns upon the validity of an ordinance passed by the Mayor and Council of Hagerstown, on the second day of May, 1907. The ordinance is as follows:

"An Ordinance entitled, an ordinance, to provide regulations for the herding, keeping, and confining of domesticated animals, within the corporate limits of Hagerstown.

Section 1. Be it enacted and ordained by the Mayor and Council of Hagerstown, that it shall be unlawful for any person or persons, corporation or corporations, without a permit therefor first had and obtained from the Mayor and Council to herd, keep or confine, temporarily, transiently, habitually or permanently within a distance of two hundred and fifty (250) feet from two or more residences, which shall be situ-

ated, within the corporate limits of Hagerstown and upon a public street thereof, any horses, mules, donkeys, cattle, cows, steers, bulls, sheep, hogs, goats or other domesticated animals whatsoever, whether the same are awaiting transportation or otherwise unless such horses, mules, donkeys, cattle, cows, steers, bulls, sheep, hogs, goats or other domesticated animals shall be herded, kept or confined in an enclosed structure or building that shall be covered throughout by a substantial roof and enclosed on all sides by a tight wall containing apertures only for such doors and windows as shall be necessary to secure access and ventilation to such enclosed structure or building, and in no event shall any such doors and windows open or look upon any public street of said Hagerstown."

The validity of this ordinance is attacked upon several grounds, (1) Because, it is unfair, partial and unreasonable. (2) It places unreasonable, arbitrary and oppressive power in the hands of Mayor and Council. (3) It prohibits the appellee company from doing what it is authorized and required to do, both as a common carrier and by statute. (4) It was not enacted, as required, by the charter of Hagerstown.

The facts of the case briefly stated are these: On the 25th of May, 1907, a warrant was issued by one of the Police Justices of Hagerstown charging upon oath that on the 10th day of May, 1907, the appellee corporation did without a permit first had and obtained herd, keep, and confine within a distance of two hundred and fifty feet from two or more residences situate on Summit avenue, a public street within the corporate limits of Hagerstown, a certain large number of cattle, cows, steers, and hogs, then and there, not being herded, kept and confined in an enclosed structure or building as provided by ordinance regulating the herding, keeping, and confining of domesticated animals, and contrary, to the provisions of the ordinance passed, on the second day of May, 1907.

The appellee company was arrested under the warrant and on 3rd of June, 1907, filed in the Circuit Court for Washington County the bill of complaint contained in the record. A preliminary injunction was thereupon granted by the Court below restraining all further prosecution of the suit under the

ordinance, and from an order of Court overruling a demurrer interposed on the part of the defendant, this appeal has been taken.

The bill of complaint charges that the plaintiff is a corporation duly incorporated under the laws of the State of Maryland, is engaged in intrastate and interstate commerce, and is common carrier of passengers, freight and live stock; that among the lines of railroads operated by it is the Washington County Railroad Company, extending from Hagerstown, Maryland, to Weverton, Maryland, where it connects with the main line of the appellee road.   That the Washington County Railroad Company is a corporation duly incorporated by an Act of the General Assembly of Maryland, passed at the January session, 1864, ch. 334, and that under its charter, it is required to furnish accommodation for the transportation of passengers and property offered for transportaton, at the place of starting and at the usual stopping places for receiving passengers and freight.   That the appellee company is in possession and control of the property of the last named railroad company including its terminals and stock yards, at Hagerstown, and operates the same for and on account of the Washington County Railroad Company under the terms and provisions of its charter, and subject to the duties and obligations, imposed upon and granted to it, by the Act of 1864.

The bill further charges that the appellee as a common carrier of live stock, and by the express provisions of the Act of 1864, is required to provide proper and suitable stock pens and facilities for loading and unloading, and caring for horses cattle and other live stock delivered to it in the course of its business at its regular stations.   That in pursuance of law they have erected, entirely on land, owned by it, convenient to its station and place of starting in Hagerstown, proper accommodations to receive for shipment live stock offered for transportation, to wit, an enclosure into which the live stock are driven.   The enclosure is connected by an elevated foot way, raised at such an angle as will offer safe ascent and descent to or from the cars, and over which the live stock are driven for

the purpose of loading for transportation, or unloading them, at the point of consignment. That without such enclosure and foot way it would be unable to perform the duties required of it by law, as a common carrier, to those offering live stock for transportation or to those receiving live stock for transportation or to those receiving live stock consigned to them and would render itself liable to actions for damages.

It further avers that the enclosures are kept clean and free from any accumulation of offensive odors or dirt, and that its use, is in accordance with its chartered rights and in compliance with its legal duty. That it is impossible for the plaintiff and the Washington County Railroad Company to locate their stock yards at a convenient place near to their station and convenient to the place of starting as required by its charters, without having the same within the prohibited distance, from two or more residences situate within the corporate limits of Hagerstown and upon a public street thereof, and that it is impracticable to keep and maintain the stock yards for the uses stated in compliance with the requirements of the ordinance.

The bill also alleges, that the appellee did on the day charged, receive in due courses of its business, as a common carrier, certain live stock delivered to it for transportation and shipment from its station in Hagerstown, to points on its line outside and kept the same for a reasonable time until the same could be loaded into its cars, shipped and transported, but that in so doing, it was in the proper discharge of its rights and duties, as a common carrier, of live stock and that it was done in the mode and manner above stated, and in accordance with the law imposed by its charter and as a common carrier.

The bill of complaint admits the charge in the warrant but avers that the ordinance is illegal, void and of no effect, because the same is partial and unreasonable; is in restraint of trade; in violation of the Interstate Commerce Act; in violation of the State Constitution and the fourteenth amendment of the Constitution of the United States, that it was not enacted, and passed as required by the charter of Hagerstown

and that it is invalid and contrary to law, because it confers upon the Mayor and Council unreasonable and arbitrary power, under which unfair, unjust and hurtful discriminations may be practiced in its enforcement, in that companies engaged, as a common carrier, in the transportation of live stock may be put to a disadvantage in the conduct of the public business in favor of others engaged in the same business.

It will be thus seen upon the facts alleged by the bill, and admitted by the demurrer to be true, that the principal controversy here relates to the validity of the ordinance in question.

It is clear that the power of the Mayor and City Council of Hagerstown to pass the ordinance must depend upon the authority conferred by the Legislature, either by express grant or by a fair and reasonable intendment. It will be found amongst the powers conferred by its charter, are:

1. The Mayor and Council shall have the power to pass all ordinances necessary for the good government of the town.

2. "To prevent, remove and abate all nuisances or obstructions in or upon the streets, lanes, highways, alleys, drains or water courses, or in or upon any lot adjacent thereto, and to provide for imposing a fine on any persons causing or creating such nuisance or obstruction."

3. "And for the preservation of the cleanliness, health, peace and good order of the community."

4. "And for the protection of the lives and property of the citizens."

5. "And to suppress, abate and discontinue, or cause to be suppressed, abated and discontinued, all nuisances within the corporate and sanitary limits of the town, they may pass all ordinances or by-laws from time to time necessary."

6. "To regulate and control all offensive trades, manufactures and traffic of offensive fertilizers or other commodities within the town limits."

The principal question then is whether or not the ordinance in question is a valid exercise of the powers thus conferred.

It is well settled that a municipality has no power to declare a thing a nuisance which is not such at common law or has not been declared to be such by statutes. *Frostburg* v. *Wineland*, 98 Md. 239; *Yates* v. *Milwaukee*, 10 Wall 497.

A stock yard situated in a town is not a nuisance *per se*, yet this ordinance makes unlawful that which it is necessary for the plaintiff to do in the performance of its duties, as a common carrier, and which confessedly under the demurrer, is not a nuisance.

In *State* v. *Mott*, 61 Md. 303, it is said, that whatever power can be properly exercised by municipal authority over the rights and property of the citizen, must be derived from the Legislature of the State. It must be by express grant or by fair and reasonable intendment; for otherwise the trades and business of the people, would be at the mercy, and be made dependant upon the caprice, of those who might exercise municipal power, instead of being governed and regulated by the general law of the land. While the Legislature has granted to the Mayor and Council of Hagerstown ample power to pass ordinances necessary for the good government of the town, to prevent, remove and abate nuisances, to regulate and control offensive trades, &c., yet it has not authorized the exercise of an unlimited control, over the trades and business occupations of its people, by the passage of an ordinance similar to the one in question.

Besides this, it will be observed that the ordinance does not establish or prescribe any general rules by which the Mayor and Council are to be controlled or guided in granting or withholding the permission, to herd, keep or confine the animals mentioned therein. It provides, that the herding, keeping and confining, temporarily, transiently, habitually or permanently of domesticated animals within the corporate limits of Hagerstown, as prescribed therein, shall be unlawful without a permit from the Mayor and Council. In other words, notwithstanding the business the appellee may be engaged in, is a lawful one, and in accordance with its chartered rights, it may be destroyed or taken from it and given to its

competitors, at the mercy or partisan action of the municipality. While the Courts, Federal and State, have been exceedingly liberal in the construction of ordinances passed for the good government, protection of the health, peace and good order of municipalities, yet they have always held, that if an ordinance was capable of being administered partially or unreasonably it was invalid. In *re Christensen*, 43 Fed. Reporter, 243, it is said: "The fact that it permits arbitrary discriminations and abuses in its execution, depending upon no conditions or qualifications whatever, other than the unregulated arbitrary will of certain designated persons, is the touchstone by which its validity is to be tested." In *Cicero Lumber Co.* v. *Cicero*, 177 Ill. 9, 42 L. R. A. 705, the Supreme Court of Illinois, in a well considered case, says: The ordinance, in so far as it invests the board of trustees with the dis · cretion here indicated, is unreasonable. "It prohibits that which is in itself and as a general thing lawful, and leaves the power of permitting or forbidding the use of traffic teams upon the boulevards to an unregulated official discretion, when the whole matter should be regulated by permanent local provisions operating generally and impartially. The ordinance is not general in its operation. It does not affect alike all citizens who use traffic vehicles. It is only persons driving traffic vehicles upon the boulevards without the permission of the board of trustees who are subjected to the penalties of the ordinance. The ordinance in no way regulates or controls the discretion vested thereby in the board. It prescribes no conditions upon which the special permission of the board is to be granted. Thus, the board is clothed with the rights to grant the privilege to some and to deny it to others. Ordinances which thus invest a city council or board of trustees with a discretion which is purely arbitrary and which may be exercised in the interest of a favorite few, are unreasonable and invalid. The ordinance should have established a rule by which its impartial enforcement could be secured."

The ordinance in the case at bar, we think places unreason-

able, arbitrary and oppressive power in the hands of the Mayor and Council, and we are compelled to pronounce it invalid and void. In the case of *Mayor, &c.* v. *Radecke,* 49 Md. 230, this Court held, that where an ordinance laid down no rules by which its impartial execution could be secured, or partiality and oppression prevented, it would be declared invalid. The conclusion reached by us in this case, is sustained by the weight of authority in the Federal Courts, and the decisions of this and other States. *Baltimore* v. *Radecke,* 49 Md. 217; *Bostock* v. *Sam,* 95 Md. 400; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Cov. Stock Yards* v. *Keith,* 139 U. S. 128; *Crowley* v. *Christensen,* 137 U. S. 89.

The cases of *Commissioners of Easton* v. *Covey,* 74 Md.; *Fisher* v. *St. Louis,* 194 U. S. 361, and other cases relied upon by the appellant, are unlike this. And in holding this ordinance void and invalid for the reasons stated, "we contravene no decisions in our own State, and impose no unnecessary restraints upon the action of municipal bodies" within proper and constitutional limitations. There are other questions raised on the record, in this case, but as we hold the ordinance here in question to be invalid and contrary to law, it will be unnecessary for us to discuss them. For the reasons given, the decree of the Circuit Court for Washington County, will be affirmed.

> *Decree affirmed, with costs in this Court and in the Court below.*