## CHOCTAW PRESSED BRICK CO. v. TOWNSEND et al.

No. 14907—Opinion Filed Feb. 24, 1925.

Rehearing Denied May 12, 1925.

(Syllabus.)

**1. Convicts—Labels for Convict-Made Goods —Purpose of Statute.**

In the passage of the act requiring convict-made goods to be labeled as "Convict-Made Goods", when sold to consumers, said act being chapter 6, Sess. Laws 1910, sections 11015 and 11016, Comp. Stats. 1921, the Legislature had a two-fold object in view, to wit: The protection of free labor against competition with convict labor, and protection of the public against deception in the sale of "convict-made goods," not labeled as such.

**2. Action—Elements of "Cause of Action" —Pleading—Injunction Against Unlawful Acts of Officers Injurious to Property Rights—Sufficiency of Petition.**

(a) In either an action or a special proceeding for relief from an injury sustained in order to constitute a cause of action, within contemplation of our Code of Civil Procedure, two essential elements must appear from the facts alleged in the petition. to wit: (1) That plaintiff has been injured by defendant; (2) that such injury is one for which either the provisions of law or principles of equity will, one or the other, afford relief.

(b) When these two elements are made reasonably definite and certain, a cause of action has been stated.

(c) In a proceeding for relief by injunction against a public officer, where it is made reasonably definite and certain in the petition that plaintiff is sustaining a pecuniary injury to his private property rights, by reason of the continuous unlawful acts of such officer, naming the acts which cause the injury and showing that such acts consist of violations of the law by such officer, also showing wherein such acts are injurious and the extent of the injury, and that such injuries will become irreparable unless relief is granted, such statement of facts is sufficient to constitute ground for relief.

**3. Same — "Detriment" — Statutes—Damages—Injunctional Relief.**

(a) Under section 5970, Comp. Stats. 1921, "detriment is a loss or harm suffered in person or property."

(b) Under section 5967, Id., relief may

be had from a detriment either in compensation through an action for damages or in preventive relief through the equity powers of the courts.

(c) Under section 405. Id., where it appears from the petition that plaintiff is entitled to the relief demanded and such relief consists of restraining the commission or continuing of some act which would produce injury to plaintiff, an injunction may be granted.

### 4. Convicts—Labels for Convict-Made Goods —Construction of Statutes.

While sections 11015 and 11016, Comp. Stats. 1921, are penal in their nature, at least to the extent of providing a penalty for violation thereof, yet such statutes are also preventive in that they are intended to prevent free labor from being forced to compete with convict labor and to prevent the public from being deceived by the sale of convict-made goods not labeled as such, and, to the extent that such statutes are preventive against pecuniary injury to private rights, they are civil in their nature and to such extent not subjected to the strictness of construction to which penal laws are subjected.

### 5. Injunction—States—Right to Restrain Unlawful Acts of State Officers Injurious to Property Rights.

Although the state itself cannot be enjoined, yet when state officials are acting in an unconstitutional or otherwise illegal manner to the pecuniary detriment of private citizens, they are not regarded as acting for the state and may be enjoined. And where the intervention of equity by injunction is warranted by the necessity of protection to civil rights or property interests the mere fact that a crime or statutory offense must be enjoined, as incidental thereto, will not operate to deprive the court of its jurisdiction.

### 6. States—"Right to Engage in Business" —Labels on Convict-Made Goods—State Agencies Amenable to Statutes.

(a) While section 31, art. 2, of the Constitution authorizes the state to engage in business, yet such section does not make it compulsory nor mandatory upon the state to engage in any kind of business in a governmental capacity, nor in the exercise of any governmental function.

(b) Where the state through its officers engages in the manufacture and sale of convict-made pressed brick to the public, it is not thus acting in the exercise of its governmental functions, but is merely engaged in a business enterprise as such.

(c) Where a state through its public officers engages in a purely business enterprise as such, in the manufacture and sale of convict-made goods to the public, such

officers are subject to the same requirements of law as to the labeling of convict-made goods before placing same upon the public market as are other business enterprises subjected.

### 7. Injunction—States—Preventive Relief Against State Officers from Pecuniary Injuries Not Action Against State.

In a proceeding by the injured party solely for preventive relief from pecuniary injuries caused by acts of public officers, such acts consisting of violations of law, such a proceeding is not a suit against the state within the purview of the Constitution, but is a proceeding merely to prevent injury to private property rights, and may be maintained in the name of the injured party. In such case, however, proof of the pecuniary injury must be clear and convincing.

### 8. Same—Sale of Convict-Made Goods Without Label—Injunctional Relief.

Record examined and held, that under the circumstances of this case plaintiff had no adequate remedy for relief except through resort to the equity powers of the courts.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Injunction by the Choctaw Pressed Brick Company against J. H. Townsend, warden of the Penitentiary, and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

Geo. M. Porter and John L. Fuller, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Edwin Dabney, Asst. Atty. Gen., for defendants in error.

HARRISON, J. The plaintiff in error brought this action in the district court for injunction against the defendants in error, warden, deputy warden, and assistant deputy warden of the state penitentiary, to enjoin said defendants from selling "convict-made pressed brick" which do not bear the label which section 11015, Sess. Laws 1921, requires to be borne by convict-made goods. Without stating the grounds therefor, the trial court sustained a demurrer to the petition, and plaintiff appeals to this court assigning error in sustaining the demurrer.

The substance of the material allegations in the petition is that the plaintiff is a corporation engaged in the manufacture and sale of pressed brick at McAlester, Okla., the city at which the state penitentiary is located; that the defendants in error, assuming to act under authority of law, are engaged in manufacturing pressed brick by

convict labor and selling such product to the public without labeling same as said section 11015, supra, requires; that, because of defendants' violation of said statutes by failing to label said products as "convict-made goods" plaintiff is thereby forced into an unlawful competition with convict-made goods; that by reason of defendants being able to place such goods upon the public market by convict labor at a materially lower price than plaintiff is able to place the same class of goods upon the market by paid labor and by reason of defendants deceiving the public by failing to label said goods as required by law, plaintiff is unable to compete with the prices at which said convict-made goods are placed upon the market, and is therefore unable to sell its goods except at a material loss in cost of placing same on the market, and will thereby be forced to go out of business and is thereby being damaged and will ultimately be irreparably damaged unless defendants, warden and others, be restrained from placing such convict-made pressed brick upon the public market in violation of law. Wherefore plaintiff prays for an injunction against said defendants, to enjoin them from selling such goods to the public without labeling them as required by law.

The specific ground upon which the demurrer was sustained is not apparent from the record. Several theories upon which it is contended the court might have and should have sustained the demurrer are presented by defendants in error, the same having been set out as grounds for the demurrer, to wit: That the petition fails to state a cause of action; that plaintiff is not the real party in interest; that the action is a suit against the state and therefore cannot be maintained; that the facts alleged are insufficient to entitle plaintiff to relief; and that plaintiff has an adequate remedy at law. Each of these grounds or theories is argued by defendants in error with many citations of authorities to support their contention.

On the other hand, plaintiff in error, in opposition to such theories and in support of its contention that the court erred in sustaining the demurrer, cites many authorities in support of its contention that plaintiff was a party in interest, that under the law, and the decisions it had a "right of action" against defendants and had stated a cause of action, in that it had alleged that it had been damaged, alleged wherein and how it had been damaged, the extent of its damage, and that such damage had been sustained by reason of defendants' violation of the law

in placing convict-made goods upon the market without the label which the statutes above referred to require such goods to bear. The question, therefore, is whether, under such state of facts, plaintiff is entitled to any relief, either under the law or in equity.

Hence we must go to the real substance of the case in order to properly determine same.

The statutes in question, sections 11015 and 11016, Comp. Stats. 1921, are as follows:

Sec. 11015. "Each article of clothing, harness, saddles or shoes, tools, implements or machinery, or other articles of merchandise manufactured by convicts, or in any prison or penitentiary of any state of the United States, or in any federal prison or penitentiary, or any territory or district thereof, before being sold or offered for sale in the state of Oklahoma by any merchant, salesman, agent or representative of any firm or corporation or individual, shall bear a label not less than two by two inches in dimensions, which shall bear thereon the words "Convict-Made Goods", followed by the year and the name of the penitentiary, prison, reformatory, or other establishment in which it was made, in plain English lettering of the style known as Roman capitals. Said label shall be placed upon the outside of and upon the most conspicuous part of said article."

Sec. 11016. "Any person, firm or corporation or any salesman, agent or representative of any firm, corporation or individual, selling or offering for sale within the state of Oklahoma, clothing, harness, saddles, shoes, or any other article of merchandise manufactured by convicts, or in any prison or penitentiary of any state, or of the United States, or any territory or district thereof, not bearing said label; or any merchant, salesman, agent or representative of any firm, corporation or individual, who removes said label from any article manufactured by convicts or prisoners, prior to its sale to the customer, shall be guilty of a misdemeanor, and shall be fined in a sum not less than one hundred dollars, nor more than five hundred dollars, or imprisoned in the county jail for not less than one month, nor more than six months, or may be punished by both such fine and imprisonment."

While these two sections are compiled under the chapter on "Trade Marks and Labels", in Comp. Stats. 1921, yet in reality they were originally sections 1, 2, and 3, ch. 6, Sess. Laws 1910, the title of which is:

'An act requiring the labeling of all convict-made goods sold within the state of Oklahoma; prescribing the size and form of

labels to be used; preventing the removal of labels until after goods are sold to consumers. and providing penalties for the violation thereof."

Thus, in construing the provisions of said statute in the light of the above title, it is obvious that the Legislature had a definite two-fold object in view when it enacted said law, such object being to protect free labor against competition with convict labor and to prevent a deception being practiced on the public by the sale of convict-made goods without labeling them as such. The question, then, is whether, under the foregoing statutes, the state, acting through its representatives in a business enterprise, is not required to comply with the provisions as to labels on convict-made goods, the same as is required of other merchants, corporations, agents, etc.

This brings us to the first ground of demurrer, to wit, that the petition fails to state a cause of action. The substance of the material allegations are set out above. These allegations, taken as true on demurrer, are sufficient to show that plaintiff has sustained a detriment and will, if relief is not granted, sustain irreparable pecuniary injury to his private property rights, and sufficient also to show who caused the detriment, the extent of same, and that such detriment was caused by defendants' violation of the law. This, on demurrer, is sufficient to constitute one of the two essential elements of a cause of action, viz., facts showing that plaintiff has sustained an injury and who caused it; the other being the relief which the facts show plaintiff entitled to receive. The essential elements of a cause of action, within contemplation of the Code of Civil Procedure, have been clearly defined by this court in the following cases: Stone v. Case, 34 Okla. 5, 124 Pac. 960; Security National Bank v. Geck, 96 Okla. 89, 220 Pac. 373; Bynum v. Strain, 95 Okla. 45, 218 Pac. 883. The lacking element, therefore, if one is lacking in the case at bar, is whether, under the facts stated, the plaintiff is entitled to any relief either under the law or in equity. The case is of that peculiar nature which requires a construction of the law in order to determine whether plaintiff is entitled to relief either in law or equity. The demurrer concedes that plaintiff has sustained a detriment, which is defined in section 5970, Comp. Stats. 1921, as follows:

"Detriment is a loss or harm suffered in person or property."

Section 5967, Id., is as follows:

"As a general rule, compensation is the relief or remedy provided by the law of this state for the violation of private rights, and the means of securing their observance; and specific and preventive relief may be given in no other cases than those specified herein."

Under the foregoing section, relief may be had from a detriment either through compensation, as defined in the first clause of said section, or by specific and preventive relief, as authorized in the latter clause of said section.

Under the petition plaintiff does not seek relief through compensation, but seeks specific and preventive relief from a continuation of the detriment it has sustained and is sustaining.

Under section 405, Comp. Stats. 1921, whenever it appears by the petition that plaintiff is entitled to the relief demanded and such relief consists of restraining the commission or continuance of some act which would produce injury to the plaintiff, an injunction may be granted. Besides this, the district courts of the state and this court are vested with general. equity powers. Therefore, if, under the facts stated, plaintiff is entitled to preventive relief, either in equity or under the law, a preventive order should thereupon issue to the defendants.

To determine this question, we must observe that the state and its officers and agents are not specifically mentioned in sections 11015 and 11016, supra. and not overlook the suggestion in the briefs that said sections are penal in their nature and under the general rule are to be strictly construed.

While it is true that said statutes provide a penalty for violation of their provisions, and to such extent are penal in nature, yet, as heretofore stated, they have the two-fold purpose of preventing free labor from being forced to compete with convict labor and to prevent the public from being deceived by convict-made goods not labeled as such. So, to the extent that such statutes are intended to prevent pecuniary injury to private rights, they are civil in their nature, and to such extent are not subject to the strictness of construction with which penal laws are construed.

As to whether an injunction will lie against state officers, the following text is announced in 22 Cyc. 881, to wit:

"Although a state itself cannot be enjoined, yet when state officials are acting

in an unconstitutional or otherwise illegal manner, they are not regarded as acting for the state, and they may be enjoined"

—citing McConnell v. Ark. Brick Co. (Ark.) 69 S. W. 559, which is a suit directly in point, in that it was a suit to enjoin the penitentiary commissioners from doing an unlawful act to the pecuniary detriment of petitioner for injunction; also Chesapeake R. Co. v. Miller, 19 W. Va. 408; Smyth v. Ames (U. S.) 49 L. Ed. 819; Star v. Chicago R. Co., 110 Fed. 3; also N. Y. Mut. L. Ins. Co. v. Boyle, 82 Fed. 705.

In 22 Cyc. the following text is announced, to wit:

"Nevertheless the rule is well settled that where the intervention of equity by injunction is warranted by the necessity of protection to civil rights or property interests, the mere fact that a crime or statutory offense must be enjoined as incidental thereto will not operate to deprive the court of its jurisdiction" (902)

—citing cases from twelve different states wherein the question has several times been before the courts of such states, together with a number of federal court and U. S. Supreme Court decisions, including the famous case of In re Debs (U. S.) 39 L. Ed. 1092, together with a number of English cases of recent years.

That a court of equity will grant preventive relief from a pecuniary detriment sustained by a private citizen and resulting from the violation of law by a public officer. See sections 1308 to 1310, inclusive (4th Ed.) High on Injunctions.

That public officers may be enjoined from violations of the law where such violations affect property rights. See 14 R. C. L. p. 377. See, also, notes to 35 A. S. R. 671, 69 A. S. R. 134, and 89 A. S. R. 714.

From an examination of the decisions cited in support of the text announced by the above text-books, the rule seems unquestionably settled that while equity will not lend its process to prevent the commission of crimes, nor to prevent public officers from the enforcement of penal statutes, yet when the commission of a crime results in pecuniary injury to private property rights, or when the enforcement of an invalid penal statute results in pecuniary injury to private property rights, or where public officers exceed their authority to the pecuniary injury of private property rights, then the person injured has a rightful resort to equity and equity will grant relief.

However, in all such cases the rule is equally well settled that the fact of pecuniary injury must be established by clear and convincing proof. Therefore, the fact of pecuniary injury in the instant case being conceded upon demurrer, there can be no question, under the authorities above cited, but that equity will enjoin the state officers in question from continuing such injury, provided such officers are included within the requirements of section 11015, supra, as to the labels on "convict-made goods" which are sold to the public.

It is contended that injunction will not issue against defendants herein for the reason that the state nor its officers are included within, or at least not specifically named in, the statute in question. But it must be borne in mind that the state, in engaging in a mere business enterprise, is not thereby discharging a governmental function, but is a mere business institution the same as a corporation or partnership or an individual.

While section 31, art. 2, of the Constitution authorizes the state to engage in business, yet the Constitution does not require the state nor make it mandatory upon the state to engage in business either as a business enterprise or as a governmental function. It merely authorizes the state to engage in business, if it chooses to do so, or to decline, if it prefers not to do so, the same as it would authorize a foreign or domestic corporation or other business institutions to engage in business, but in neither event does the business enterprise in which the state may be engaged become a govermental function. The state becomes, in such case, a mere business institution, and as such, subject to the same constitutional and statutory requirements as are other business enterprises subjected in the manufacture and sale of convict-made goods. So, when the Legislature enacted the foregoing statutes, it was the obvious intention that all business enterprises dealing in convict-made goods should be required to label such goods as provided by such statute, whether such business enterprise be an individual, partnership, corporation, or be financed and run with convict labor by the state, in the capacity of a business institution. The rule would be different, however, if the engaging in business enterprises by the state were mandatorily made a governmental function by the Constitution, but said section 31, art. 2, of the Constitution is not mandatory upon the state, nor upon any departments of state government, to enter into any kind of business as a governmental function or in a governmental capacity, but said section mere-

ly authorizes the state to engage in business as a business enterprise.

Therefore, when state officers, in the name of the state, engage in the purely business enterprise of selling convict-made goods, without labeling them as required by said statute, thereby violating the provisions of law governing business enterprises, and thereby causing pecuniary injury to private property rights, equity will lend its powers to prevent such injury.

It is useless to go into the field of speculation as to how far the state may exercise its police powers, or as to when the exercise of such powers would be prevented, because such questions are not properly in the case at bar, hence it may suffice to say that there is no such thing as the proper exercise of police power, where the exercise of such power results in pecuniary injury to private citizens without compensation for such injury, section 7, art. 2, and sections 23 and 24, art. 2, of the Constitution, each forbids such a policy and each renders such policy incompatible with the doctrine of proper exercise of police power.

The next ground for demurrer is that plaintiff is not a party in interest, but we think the petition shows plaintiff to be a real party in interest. The petition shows that plaintiff has sustained pecuniary injury to its own private property rights and seeks relief from such injuries alone.

The next ground is that it is a suit against the state. With this contention we cannot agree. It is neither a suit against the state nor a suit to make the state a party defendant, nor a suit against the state for compensation in damages. nor a suit in the name of the state to enforce the penalties prescribed by the statute for the violation thereof, nor a suit to enjoin state officers from discharging their duties. A state cannot discharge a duty to the state by violating the law of the state. It is no more than a suit to enjoin the agents of the state engaged in the name of the state in a purely business enterprise, from causing irreparable injury to plaintiff's property rights by violating the statutes which require convict-made goods to be labeled as such before being placed upon the public markets.

It is not a suit to enjoin the state from conducting a business enterprise, nor a suit to prevent the state from entering into the manufacture and sale of convict-made pressed brick, as a business enterprise, but a suit merely asking preventive relief from the detriment caused to plaintiff by the defendants' violation of the laws of the state. The plaintiff asked for no more, nor under the facts stated in the petition is it entitled to more, than relief from pecuniary injuries sustained by reason of defendants' violation of law. In other words, plaintiff asks for no more, and under the facts stated is entitled to no more, than that defendants be required to label their goods as the statutes require them to be labeled, and thus relieve plaintiff from unfair and unlawful competition with convict-made goods not labeled as such, and that they be enjoined from selling such goods without compliance with the statutes.

The next ground is no more than a repetition of the first ground. It goes merely to the sufficiency of the facts alleged.

It is also contended that the act itself is invalid for the reason it seeks to prohibit the sale of convict-made goods from other states in this state without bearing the prescribed label, and is therefore a restriction upon interstate commerce; but there is no question of interstate commerce involved in this case, hence such question is not decided.

The last ground, viz., "that plaintiff has an adequate remedy at law," is not sustainable under the facts stated in the petition herein. Under the peculiar circumstances of this case the plaintiff has no adequate remedy except to resort to equity.

We must conclude, therefore, that the trial court erred in sustaining the demurrer.

The judgment of the trial court is therefore reversed and remanded, with directions to reinstate plaintiff's petition. if reinstatement be asked for by plaintiff, and thereupon to overrule defendants' demurrer and to permit such further proceedings, not inconsistent with the views herein expressed, as may be necessary to a final determination of the issues involved.

Reversed and remanded, with directions.

All the Justices concur, except BRANSON, J., not participating.

Note.—See under (1) 13 C. J. p. 929 (1926 Anno); (2) 1 C. J. p. 951; 32 C. J p. 319; (3) 18 C. J. p. 1030; 20 C. J. p. 5; 22 C. J. p. 42; (4) 13 C. J. p. 929 (1926 Anno); (5) 32 C. J. pp. 247. 248. 277; (6) 36 Cyc pp. 866 (1926 Anno) 883 (1926 Anno); (7) 36 Cyc p. 917; (8) 31 C. J. p. 60.