Ex parte E. L. TOMLINSON.

No. A.-8494.    May 19, 1933.
(22 Pac. [2d] 398.)

G. G. McBride and A. L. Jeffrey, for petitioner.

W. H. Brown and A. P. Van Meter, for respondent.

DAVENPORT, J.  This is an original proceeding in habeas corpus.  The petitioner alleges in his petition:

That he is unlawfully restrained by the chief of police of Oklahoma City.  That he is charged in the police court with the violation of Ordinance No. 4395, section 1, which is as follows:

"It shall be unlawful and an offense for any person, firm or corporation to drive or operate any ambulance on the streets within the city of Oklahoma City, on any emergency call without first having called the police station of the city of Oklahoma city and having received permission to make said emergency call.  The radio dispatcher in

the said police station shall authorize the first ambulance operator who calls reporting an emergency call to make said call and shall inform all subsequent persons who report said call that the emergency call is already being made by the one who has called first. Any person, firm or corporation other than the first one to report and receive permission to make said call, who makes an emergency call, shall be guilty of an offense."

That he was convicted and fined the sum of $10 and costs. Your petitioner further alleges:

"That his restraint is illegal and unauthorized in that said Ordinance No. 4395 is unconstitutional, void and violative of petitioner's rights under the Constitution of the United States and the Constitution and Statutes of the state of Oklahoma; in that said ordinance is arbitrary, discriminatory in restraint of trade, and unreasonable, both in its contents and method of administration. Said ordinance is unconstitutional and void, for the further reason that it is not within the police power of the city of Oklahoma City, Oklahoma, and deprives your petitioner of his liberty and use of his property without due process of law.

"Your petitioner further alleges and states that said ordinance is void and unreasonable for the reason that said ordinance requires your petitioner to first secure a permit to make an emergency call and in case a permit has been granted to another ambulance driver to make the same call, then your petitioner is refused said permit, all of which prevents this petitioner from making a call to any particular place within the city limits, as well as any particular place at any distance outside the city limits, for the reason that said ordinance prohibits him from using the city streets in reaching the city limits in making a call outside of the city limits."

It is further alleged by the petitioner that said ordinance is a violation of section 10327, rule 7, Oklahoma Statutes 1931, which is as follows:

"At intersecting roads or streets, vehicles approaching from the right shall have the right of way over those approaching from the left. United States mail, fire apparatus, ambulances, police patrols, and vehicles of physicians, when plainly designated, shall have right of way in any street or road or through any procession."

Petitioner further alleges that he has at all times driven his ambulance plainly designated in large letters in four different places the word "ambulance"; that in making the call for which he was arrested and convicted it was necessary for your petitioner to use South Robinson street in the city of Oklahoma City, or some other adjoining street, in order to arrive at the city limits; the call he was answering was several miles outside the city.

This being a proceeding in habeas corpus, the question to be determined is the validity of the ordinance. If the ordinance is within the police power of the city of Oklahoma City, the police court had jurisdiction of the defendant and the subject-matter, and the writ should be denied, but, if the city of Oklahoma City in passing this ordinance went beyond the power granted to it by the statute laws of Oklahoma and its charter and exceeded its police power, then the writ should be granted.

In Ex parte Hall, 49 Okla. Cr. 366, 294 Pac. 823, this court, in considering an ordinance of the city prohibiting ambulances using sirens as a warning to pedestrians of the city that the ambulance was approaching, said:

"An ambulance, when plainly designated, has the right of way in any street or road through any procession."

Hall had been convicted of having used a siren on his ambulance, in violation of the city ordinance which prohibited the use of the siren. The respondent, the city

of Oklahoma City, urged the ordinance was for the purpose of preventing an obnoxious noise which disturbed the peace and repose of the citizens of the city.

This court sustained the ordinance and held that the ordinance applied to all ambulances alike, and that it did not take away any right or give any preference to one ambulance driver over another. The question in the Hall Case is not the same as the question in this case. It is not disputed a city under its police power may regulate the operation of traffic, and it is conceded that the statutes give the city the right to regulate the kind of horn, bell, or gong vehicles having a preference may use.

In this case the question involved is, Has the city the right to compel the owner of an ambulance, when he receives an emergency call, to delay and take time to report it to the police department, and get its permission to make the call? We do not think so. The respondent urges the ordinance the defendant is charged with violating is a valid ordinance, and that it has the right to enforce the same, notwithstanding it requires the owner of the ambulance who receives the emergency call to report to the police department and secure permission to make the call before an ambulance owner can answer the call. The petitioner insists that, when the city attempts to enforce the ordinance that requires him on receiving an emergency call for an ambulance to report to the police department and get permission to make the call, it interferes with, restrains and injures his business, and that part of the ordinance requiring him to secure permission to make the call before he starts is unconstitutional and void.

It is shown by the petitioner that he complied with the regulations of the statutes, and ordinance of the city,

by having his ambulance plainly labeled in four different places with the word "Ambulance," and that in making the call it was driven with care, and all the rules and regulations of the city as to operating an ambulance on the streets of said city, regarding signals, speed, and signs, were observed by the driver.

In Choctaw Pressed Brick Company v. Townsend, 108 Okla. 240, 236 Pac. 46, 50, the Supreme Court in part said:

"There is no such thing as the proper exercise of police power, where the exercise of such power results in pecuniary injury to private citizens without compensation for such injury.

"Section 7, art. 2, and sections 23 and 24, art. 2, of the Constitution, each forbids such a policy, and each renders such policy incompatible with the doctrine of proper exercise of police power."

In United States v. Cohen (D. C.) 268 F. 420, the court said:

"A statute cannot declare a thing a nuisance which is obviously not a nuisance, the abatement of which as a nuisance would violate the constitutional guaranty of due process of law and just compensation for private property taken for public use."

In vol. 6, R. C. L. § 226, p. 236, it is said:

"The police power of the state extends only to such measures as are reasonable, and the general rule is that all police regulations must be reasonable under all circumstances. In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object falling within the domain of the police power."

In volume 6, R. C. L. § 227, it is further stated:

"One application of the familiar rule that the validity of an act is to be determined by its practical operation and

effect and not by its title or declared purpose is that a, constitutional right cannot be abridged by Legislature under the guise of police regulations; since the Legislature has no power, under the guise of police regulations, to invade arbitrarily the personal rights and personal liberty of the individual citizen, or arbitrarily to interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations, or to invade property rights."

In City of Hagerstown v. Baltimore & Ohio R. Co., 107 Md. 178, 68 A. 490, it is held:

"An ordinance making unlawful the keeping of domestic animals in a town in a certain manner, without a permit from the mayor and council, is invalid, as capable of being administered partially or unreasonably."

In Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220, the Supreme Court of the United States, in construing an ordinance in the fourth and sixth paragraphs of the syllabus, said:

"4. The order of the city and county of San Francisco, providing that it should be unlawful for any person to engage in the laundry business within the corporate limits 'without having first obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone,' does not prescribe a rule and conditions for the regulation of the use of laundry property, to which all similarly situated may conform; but it confers a naked arbitrary power upon the board to give or withhold consent, and makes all engaged in the business the tenants at will as to their means of living, under the board of supervisors."

"6. Though a law be fair on its face and impartial in appearance, yet, if it is administered by public authority with an evil eye and an unequal hand, so as practically to make illegal discriminations between persons in similar circumstances, material to their rights, the denial of

equal justice is still within the prohibition of the Constitution."

This court has been extremely liberal in its interpretation of police power of municipalities, but the effect of the ordinance in question is to carry such regulations to an absurd, unjustifiable, and unreasonable extreme, and beyond the police power of the city. The administration of the ordinance in question is left entirely to the radio dispatcher, and, if that radio dispatcher should see fit to favor a certain funeral home, whether for profit, friendship, or because of malice toward others, it would be easy for him to do so. It matters not how urgent the emergency call, under the terms of this ordinance the owner of the ambulance cannot answer without being subjected to a fine, unless he first secures permission of the radio dispatcher to make the call.

If Oklahoma City, in the exercise of its police power, may regulate ambulances to such an extent that all calls must come through the police department, then it may, by ordinance, require all taxicabs, milk wagons, grocery delivery wagons, trucks, and all other means of transportation which uses its streets to fill orders only by calls placed through the police department. To advance such an argument immediately reveals its absurdity.

Under the police power of the city it has the right to regulate the use of its streets in a reasonable manner by prohibiting reckless driving, establishing stop lines, and prohibiting undue noises and other things of like character, but the city may not in the exercise of its police power place arbitrary, unreasonable, and discriminatory regulations upon any business.

For the reasons stated herein, we hold that the ordinance in question exceeds the police power of the city.

The writ is granted, and petitioner ordered discharged.

CHAPPELL, J., concurs.

EDWARDS, P. J. (dissenting). I am not able to agree with the majority opinion that the ordinance is void as an unreasonable exercise of police power.

Section 1 of Ordinance 4395 is: "It shall be unlawful and an offense for any person, firm or corporation to drive or operate any ambulance on the streets within the City of Oklahoma City, on any emergency call without first having called the Police Station of the City of Oklahoma City and having received permission to make said emergency call. The Radio Dispatcher in the said Police Station shall authorize the first ambulance operator who calls reporting an emergency call to make said call and shall inform all subsequent persons who report said call that the emergency call is already being made by the one who has called first. Any person, firm or corporation other than the first one to report and receive permission to make said emergency call, who makes an emergency call, shall be guilty of an offense."

The contention that the ordinance is void is on the theory that it deprives petitioner of private property without due process; deprives him of a right to engage in the business of operating an ambulance service; discriminates against the operation of ambulances; is too susceptible of abuse; and denies the use of state highways into and through the city. The objections to the ordinance more or less overlap and may be summarized in the general objection that it is not a valid exercise of the police power.

This being a habeas corpus proceeding, the only question before this court is the validity of the ordinance. Jurisdiction is not questioned except on the theory that

the ordinance is invalid. Ex parte Ambler, 11 Okla Cr. 449, 148 Pac. 1061.

The record contains no evidence that the ordinance is unreasonable, and we perceive nothing in the ordinance itself which renders it prima facie unreasonable. It is a general rule that a police regulation of a municipality, in the absence of positive evidence to the contrary, is presumed to be reasonable. McGuire v. Wilkerson, 22 Okla. Cr. 36, 209 Pac. 445, 448; Grider v. Ardmore, 46 Okla. Cr. 33, 287 Pac. 776; Fifth Ave. Coach Co. v. New York, 194 N. Y. 19, 86 N. E. 824, 21 L. R. A. (N. S.) 744, 16 Ann. Cas. 695.

In the recent case of Ex parte Hall, 49 Okla. Cr. 366, 294 Pac. 823, which challenged an ordinance regulating ambulances, this court held:

"Where a penal ordinance is challenged as being void as unreasonable and beyond a proper exercise of the police power, the courts will indulge every presumption in favor of the validity of the ordinance, and will not declare it void unless it clearly appears that it goes beyond the legislative power."

Under his contention that he is deprived of his property without due process of law or just compensation, petitioner admits that ordinances enacted in the proper exercise of police powers are valid, though they may impair the full use of property, and that the use and occupation of property may be regulated, but insists that the regulation provided by the ordinance is unreasonable and oppressive, citing City of Muskogee v. Hancock, 58 Okla. 1, 158 Pac. 622, L. R. A. 1916F, 897; Choctaw Pressed Brick Co. v. Townsend, 108 Okla. 240, 236 Pac. 46; Pennsylvania Coal Co. v. Mahon et al., 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 322, 28 A. L. R. 1321.

Petitioner presents certain supposed conditions under which the ordinance might be abused or inequitably administered, citing City of Hagerstown v. Baltimore & O. R. Co., 107 Md. 178, 68 A. 490, 126 Am. St. Rep. 382; Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220; Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239.

Petitioner also argues that the ordinance restricts or regulates a right to use the highways beyond the city limits, and is for that reason beyond the power of the municipality, citing City of Arlington v. Lillard et al., 116 Tex. 446, 294 S. W. 829.

This court takes judicial notice of matters of common knowledge. That is, that Oklahoma City is a densely populated area, having more than 185,000 inhabitants, that its streets are congested with traffic, and that regulation of automotive vehicles is imperative. There is a line of authorities holding that certain classes of motor vehicles as ambulances, police cars, and fire engines are an excepted class entitled to certain special privileges, but which special privileges do not prevent a municipality from enacting traffic regulations pertaining to them. 42 C. J. § 771F, p. 1029; Echols v. Vinson, 220 Ala. 229, 124 So. 510; Lilly v. State of West Virginia (C. C. A.) 29 F. (2d) 61. See, also, rule 7, § 10327, Comp. Stat. 1931.

Section 7, art. 18, of the Constitution in part provides:

"No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the state, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment. * * *"

The same language is a part of the city charter, section 1, art. 8. This authority is sustained by the general

law, textbooks, the decisions of the courts of other states, by this court, and the Supreme Court.

It is settled law that there is no vested property right in the individual to operate vehicles upon the streets of a city. A city, in the exercise of its police power to protect the safety of its citizens, may regulate, condition, or under reasonable circumstances deny the use of the streets for such purposes. In People's Transit Company v. Henshaw (C. C. A.) 20 F. (2d) 87, a case involving an ordinance of Oklahoma City, it was held:

"There is no vested right in the use of streets, and the Legislature may deny, grant, or condition such use, or delegate such powers to the municipalities."

In Desser v. Wichita, 96 Kan. 820, 153 Pac. 1194, 1196, L. R. A. 1916D, 246, a case in which the city of Wichita had an ordinance prohibiting taxis from using certain streets unless they paid an additional license tax, the ordinance was contested on the ground of unfair discrimination in that trolley cars were not prohibited from using these streets. In holding the ordinance valid, the court said:

"Whatever natural right a citizen may have to traverse the streets of his city with a motor vehicle for the conveyance of his family or his friends, no inherent right exists to devote his vehicle to the public use of carrying passengers for hire and appropriate to himself the use of all the streets for purposes of profit. Beyond question, the city could vacate one or more of the streets over which he might desire to operate. It cannot only require him to pay a license tax, but it may regulate the manner of his carrying on his enterprise. Why may it not classify motor vehicles by themselves and refuse to permit them to crowd congested portions of the business streets where patrons of another class of vehicles—street cars—must alight and take passage? Suppose, indeed, a company

or corporation owning motor vehicles had the facilities and the desire to occupy all the streets to the utter destruction of the street car business. Would the city have nothing to say? Is the municipality a mere automaton, helpless in the presence of crowding and conflicting enterprises and scrambles for business which involve the comfort, the convenience, and the safety of the traveling public? Not so."

In the City of Muskogee v. Morton, 128 Okla. 17, 261 Pac. 183, 187, upon an analogous question, the court quoting from an Iowa case, said:

"The constitutional guaranties invoked by counsel lie at the very foundation of all those rights of person and property which are the heritage of a free people associated in a republican form of government—rights which the courts have no disposition to ignore or fritter away. Nor can the court properly ignore that other settled rule that neither the Constitution nor its amendments were designed to limit the police powers of the state. As was said by Field, J., in Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923, supra, speaking of the Fourteenth Amendment to the Constitution of the United States: 'Neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the state, sometimes termed the police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity.' This is not to say that under the guise of police power the state may do or authorize that which the Constitution expressly or impliedly forbids, but with that reservation the authority of the state is supreme. Among those prohibitions is the one which makes private property immune against seizure or condemnation to public use without compensation. It may be taken for that purpose by exercise of the power of eminent domain only upon making due compensation, but the power of eminent domain is quite dis-

tinct from the police power, and for the incidental loss or injury which the individual member of the public may sustain by reason of valid police regulations no compensation is recoverable. There is in such cases 'no divesting of property rights by the operation of the statute, and the regulations to which the exercise of such rights is thereby subjected is not prevented by any limitation upon the authority of the Legislature prescribed by the federal or state Constitution. The interests of the individual are subordinate to the public good, and the constitutional guaranties of the security of private property were not designed and do not operate to prohibit the reasonable restriction of its use by legislation enacted within the sphere of the police power for the promotion of the general welfare.' Overton v. Harrington, 126 Md. 32, 94 A. 325; Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205."

See, also, Gant et al. v. Oklahoma City, 53 S. Ct. 530, 77 L. Ed.—.

The court in McGuire v. Wilkerson, supra, held:

" 'The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege and not as a matter of natural right.' * * *

"In the case at bar, the petition discloses no property rights which the petitioner would be unlawfully deprived of by the continued enforcement of the ordinance. Petitioner and others operating automobiles for hire in the city of Pawhuska have no property rights in the streets of that city that would be superior to the regulation adopted by the board of commissioners under its police power as delegated by the laws of this state. The city of Pawhuska, having the authority to pass reasonable regulations governing automobiles operated on its streets for hire, this court would not be authorized to declare the provisions of the ordinance here attacked unreasonable, unless it clearly appeared that they were so."

In one case our Supreme Court held the police power of the city over the streets was superior even to a general statute.

In Westlake v. Cole, 115 Okla. 109, 241 Pac. 809, 810, it was held:

"The provisions of Ordinance 1204, of the city of Enid, requiring all vehicles approaching an intersection of any street, which has been designated as a boulevard, to come to a stop before entering the intersection, is not invalid because in conflict with section 10164, C. O. S. 1921, which provides:

" 'That at intersecting roads and streets, vehicles approaching from the right shall have right of way over those approaching from the left.'

"This provision of the state law does not, we think, deprive the authorities of a municipality in this state of power to designate certain of its streets as boulevards, and require the drivers of vehicles along streets crossing such boulevards to come to a stop before entering the intersection."

The exception stated in Westlake v. Cole, supra, is discussed and justified in Lamar & Smith v. Stroud (Tex. Civ. App.) 5 S. W. (2d) 824, 827, in which the following reasoning is used:

"It is true that no city has the power to adopt an ordinance which conflicts with a law of the state; but the question here is, Does that portion of the ordinance objected to conflict with the general law? The Penal Code was enacted to prevent persons from driving at dangerous rates of speed on the public highways, but that statute cannot be construed as providing all the needed and reasonable restrictions which the public safety may demand, nor can it be invoked as a license from the state to operate a motor car within the prescribed limitations, regardless of special conditions which jeopardize the safety of other

people. The statute designates what shall be punished, without reference to the consequences of doing the forbidden act. What may be offensive under the terms of the statute may be culpable negligence under the provisions of the common law. It is a matter of common knowledge that within this state are some densely populated cities, with numerous street crossings over which motor travel is heavy. Common observation shows that under conditions frequently existing in those cities the public safety demands some additional regulations of the traffic not found in the state law. The local city's requirement that motor cars stop at congested street intersections in obedience to certain established signals before proceeding across the line of traffic is a salutary regulation, and is not in conflict with the statutory provision limiting the speed at which vehicles may travel before or after passing those intersections. Neither is such a provision in conflict with an exemption from the limitations placed on speed by the penal statute. * * *''

Bearing in mind that the streets belong to the public, and that the ordinance is an exercise of the police power intended to protect the safety of persons using the streets, it is fair and reasonable. No one operating an ambulance is given an advantage over any other. The operator of an ambulance authorized to answer an emergency call is assured that his service is not dependent upon racing with and beating some other ambulance to the place where the service is required. It applies only to emergency calls, and does not deprive the citizen of his right to call any particular ambulance for any other purpose other than an emergency call. It seems unreasonable that the operator of an ambulance service would want to restore the dangerous system of ambulances racing through congested city streets to be the first at the scene of an accident.

In my opinion, Ordinance No. 4395, above quoted, is a proper exercise of the police power, and is a valid regu-

lation of the use of the streets for the safety and well-being of persons using the same.